**STONE FOREST INDUSTRIES, INC.**

v.

**The UNITED STATES.**

No. 92–491C.

United States Court of Federal Claims.

Dec. 19, 1994.

Laurence E. Thorp, Springfield, OR, for plaintiff.

Steven J. Abelson, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. Michael Trow, U.S. Dept. of Agriculture, of counsel.

## OPINION

YOCK, Judge.

This Government contract case comes before the Court on the parties' Cross–Motions for Summary Judgment pursuant to RCFC 56(d). The issue in this case is whether the plaintiff can receive a reduction in the contract price it paid the United States Forest Service for timber when the plaintiff recovers a higher volume of timber than the volume estimate provided in the contract documents. The plaintiff claims that contract section CT4.12 allows a reduction in a purchaser's contract price when a purchaser bids a higher price due to an alleged overestimate of the acreage volume in the contract area. The defendant contends that contract section CT4.12 applies only to underruns in the total sale volume of timber in relation to the volume estimate provided in the contract documents. After a full and careful review of the pleadings, briefs, and submissions filed by the parties, the Court concludes that the defendant prevails in this action.

### Factual Background

On October 20, 1989, the plaintiff entered into a contract to purchase timber located in the Willamette National Forest in Lane County, Oregon, from the United States Forest Service of the United States Department of Agriculture (Forest Service). The timber sale was identified as the Titan Too Timber Sale, Contract No. 089130 (the "Titan Too contract"). As part of the contract documents, the Forest Service provided an estimated volume of 6900 thousand board feet ("MBF") of timber over "approximately" 146 acres contained in four cutting units that the plaintiff would be able to cut, recover, and ultimately sell. The prospectus for the Titan Too Timber Sale advised bidders to visit the sale area and make their own estimates.

Stone Forest calculated its bid for the Titan Too contract by multiplying its own estimated volume per acre by the number of acres represented in the contract area by the Forest Service. In determining its bid, the plaintiff estimated a higher per acre volume of timber than the Forest Service had estimated. The plaintiff estimated the volume of timber was 9314 MBF—2414 MBF higher than the 6900 MBF estimated by the Forest Service. The plaintiff bid a lump sum amount of $3,768,302 for the timber. After the Titan Too contract area was harvested, however, the plaintiff found that the yield was much less than its estimate of 9314 MBF for the total sale volume. The actual total sale volume of the contract area was 7177 MBF. Thus, while the total sale volume was less than the plaintiff had estimated when formulating *its* bid, it was 277 MBF, or four percent, higher than the estimated volume provided by the Forest Service in the contract documents.

As a result of the disparity between the plaintiff's estimated volume (9314 MBF) and its actual yield (7177 MBF), the plaintiff retraversed the contract area. The plaintiff's measurements indicated a contract area of 140.5 acres—a difference of some 5.5 acres between the Forest Service contract estimate and the plaintiff's retraverse. The Forest Service, as well, retraversed the area and found a discrepancy of two acres between its original estimate and the traverse.[1] Because

---

1. The Government argues that this discrepancy is attributable to the fact that the retraverse was done after the contract area was harvested and that there were no errors made in the original acreage estimate. Moreover, the Government claims that at the time of the retraverse, many of the boundary markers had been destroyed by natural erosive conditions, and, therefore, there were bound to be differences between the initial traverse and the retraverse.

it believes the Forest Service made surveying and calculation errors in its acreage estimate, the plaintiff believes it is entitled to receive a reduction from its bid/award price from the Forest Service pursuant to contract clause CT4.12 even though, as already indicated, it did recover more timber volume by some four percent than the contract had estimated it would recover.

The plaintiff initially filed a claim with the contracting officer pursuant to contract section CT4.12, on the basis of an area determination error, for a contract price reduction of $146,040.11. Contract section CT4.12 provides in pertinent part:

[a] volume estimate shown in AT2 shall be revised at Purchaser's request by correcting identified errors made in determining estimated volume which results in a decrease of total sale volume of at least ten percent or $1,000 in value, whichever is less, when an incorrect volume estimate is caused by (a) an area determination error, (b) computer input error or computer malfunction, (c) a calculation error.

On April 1, 1991, the contracting officer granted the plaintiff a volume adjustment of one acre for a "calculation" error made in subdivision four of the Titan Too contract area. As a result, the plaintiff received a reduction of $26,167 from the Forest Service on this contract. The claim with respect to the remaining 4.5 acres was denied.[2] On March 19, 1992, the plaintiff submitted a properly certified claim with respect to the remaining 4.5 acres to the contracting officer, requesting a contract price reduction of $119,873.11. On May 21, 1992, the contracting officer denied this claim while confirming that the plaintiff was entitled to the earlier one-acre adjustment. On July 21, 1992, Stone Forest filed the present complaint in this Court which details its timber contract claim in this action.

## Discussion

As earlier indicated, both parties have now filed cross-motions for summary judgment.

Both parties agree that contract clause CT4.12 is the critical clause for application here. They further believe that the proper interpretation of that clause will allow its position to prevail in this action on summary judgment. No critical facts are in dispute.

A motion for summary judgment shall be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988); *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1310 (Fed.Cir. 1988).

The sole issue before the Court is whether contract section CT4.12 would allow the plaintiff a reduction in the contract price paid for timber due to an alleged incorrect acreage estimate or whether CT4.12 only allows a reduction when a purchaser harvests less timber volume than the volume estimate stated in the contract by some 10 percent or $1000 (whichever is less). Thus, the Court is faced with a matter of contract interpretation. It is beyond dispute that the interpretation of the terms of a contract is a matter of law, not a matter of fact, and a court may properly order summary judgment on these issues. *Craft Mach. Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed.Cir.1991); *City of Tacoma, Dept. of Pub. Utils. v. United States*, 28 Fed.Cl. 637, 644 (1993), *aff'd*, 31 F.3d 1130 (Fed.Cir.1994). In this legal matter, the Court holds that CT4.12 applies in only those instances where the actual total sale volume is lower than the volume estimate, and that decrease is the product of errors made in determining the volume estimate. As such, the Court finds that the defendant is entitled to summary judgment as a matter of law in this case.

---

**2.** In response to the contracting officer's decision, Stone Forest filed a complaint with the Court on December 23, 1991. *Stone Forest Indus., Inc. v. United States*, No. 91–1710C. The claim, however, was not properly certified, and Stone Forest voluntarily moved for dismissal of the initial complaint without prejudice.

■ The provision at issue is contract section CT4.12. This contract provision reads in pertinent part:

> [a] *volume estimate* shown in AT2 shall be revised at Purchaser's request by correcting identified errors made in determining *estimated volume* which results in a decrease of *total sale volume* of at least 10 percent or $1,000 in value, whichever is less, when an incorrect *volume estimate* is caused by (a) an area determination error, (b) computer input error or computer malfunction, (c) a calculation error. [Emphasis added.]

A court, when interpreting contract provisions, must apply a plain and ordinary meaning to all the contract language. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir. 1993); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991); *Fry Communications, Inc. v. United States*, 22 Cl.Ct. 497, 503 (1991).

The defendant's position in this matter is that after contract award, there is no provision for a reduction in purchase price except as provided for in contract clause CT4.12. The defendant asserts that only if the plaintiff purchaser can show that its actual total sales volume was either 10 percent or $1000 less than the estimated timber volume of 6900 MBF specified in the contract would it be entitled to a reduction in its purchase price. Since the undisputed facts show that the plaintiff actually recovered some 7177 MBF which exceeded the volume estimate contained in the contract (6900 MBF) by some four percent, the plaintiff was not damaged and thus it has no contractual right to a reduction in price paid for the timber.

The plaintiff argues, however, that the "total sale volume" referenced in contract section CT4.12 relates to the volume of *acres* contained in the contract area.[3] As such, the plaintiff contends that it is irrelevant that it actually harvested more timber than the volume estimate provided in the contract documents.[4] Rather, the plaintiff posits that contract section CT4.12 applies because the contract price would necessarily be lower if the acreage volume was lower.

The plaintiff would have the Court interpret contract section CT4.12 to apply whenever there is an incorrect acreage estimate which would reduce the contract price by 10 percent or $1,000, whichever is less. This construction would require the Court to interpret "volume estimate" to relate to an estimate of the acreage in the contract area, as opposed to the total *timber* volume in the contract, or to ignore the phrase altogether. The Court obviously cannot engage in the latter, and the plain language of contract section CT4.12 prohibits the former.

■ The key to understanding when contract section CT4.12 would allow a contract price revision is to understand how "volume estimate" and "total sale volume" are used in CT4.12. To understand "volume estimate," one need only examine the contract documents themselves. Contract section AT2 provides what is labelled a "volume estimate." The quantity contained therein is 6900 MBF, which is a measure of *timber* volume. Thus, earlier provisions in the contract relate "volume estimate" to the amount of *timber* in the contract area. The various clauses in a contract should always be read together. *D. Moody & Co. v. United States*, 5 Cl.Ct. 70, 75 (1984). Moreover, the Court should interpret contract provisions as a whole so that various clauses are applied in harmony with each other. *North Star Alaska Housing Corp. v. United States*, 30 Fed.

---

3. The plaintiff actually offers an evolving theory on the application of contract section CT4.12. In the plaintiff's initial memorandum in support of its summary judgment motion, the plaintiff contends that CT4.12 applies whenever there is an error in determining the estimated volume of the contract which would result in a lower estimated volume. However, this claim clearly lacks merit as it ignores the requirement that any error in determining the volume estimate result in a decreased total sale volume.

4. Stone Forest also argues that the earlier decision by the contracting officer to grant a one-acre reduction in the contract price on the basis of contract section CT4.12 compels the Court to apply CT4.12 in the same manner. The Court finds this argument to be without merit. The Court reviews decisions under the Contract Disputes Act *de novo*. *See Wilner v. United States*, 24 F.3d 1397, 1401 (Fed.Cir.1994); *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir. 1987). Moreover, a contracting officer's decision does not serve as precedent for the Court.

Cl. 259, 267 (1993). Therefore, section AT2 of the contract relates to *timber* volume and makes an estimate of that matter. Clause AT2, however, should be contrasted with where the *acreage estimate* is located in the contract. It appears in section AT3 which is headed "timber designations." It would be illogical to conclude that "volume estimate" in one part of the contract (clause AT2) relates to *timber* volume, while "volume estimate" in CT4.12 relates to an altogether different concept—*acreage* volume. Moreover, CT4.12 cross references section AT2, not section AT3. It commences "[a] volume estimate shown in AT2 shall be revised." It follows, then, that "volume estimate" as used in contract section CT4.12 relates to *timber* volume, not *acreage* volume.

This analysis necessarily leads to an understanding of "total sale volume." As concluded above, "volume" as used in contract section CT4.12 pertains to timber. It would be incongruous for "volume" as used two lines later in the same contract section in "total sale volume" to have a different meaning than that used in "volume estimate"— that is, relating to timber. Accordingly, "total sale volume" must denote the actual amount of *timber* which the total contract area yields. Pursuant to this analysis, the Court finds that the plain language of contract section CT4.12 pertains to *timber* volume. Such a construction is consistent with the usage of "volume" throughout the contract at issue and its application within contract section CT4.12 itself.

Finally, the Court must determine how contract section CT4.12 is applied. The provision is triggered when there are "identified errors made in determining estimated volume which result[ ] in a decrease of total sale volume." The first requirement, then, is that the total sale volume of *timber* be decreased. Next, this reduced total sale volume must have been caused by errors in determining the timber volume estimate. Obviously, these errors in determining the volume estimate must relate to overestimates or the purchaser would not be receiving a reduction in the volume estimate as per CT4.12. The consequence is a contract section which contemplates a reduction in volume estimate,

and as a result, the contract price, based on overestimates in the volume of timber which leads to a lower total sale volume. Accordingly, to obtain a price reduction under contract section CT4.12, a purchaser must establish:

1. the *timber* volume estimate provided in the contract documents;

2. a lower actual total sale volume, or yield, of timber, which is at least 10 percent or $1,000, whichever is less, than the volume estimate and which is the result of an incorrect volume estimate caused by (a) an area determination error, (b) computer input error or computer malfunction, or (c) a calculation error.

This construction of contract section CT4.12 gives full effect and meaning to all the provisions of the contract, as the Court is obligated to do. *Arizona v. United States,* 216 Ct.Cl. 221, 135–36, 575 F.2d 855, 863 (1978) ("[A]n interpretation which gives a reasonable meaning to all of [a contract's] parts will be preferred to one which leaves a portion of it useless * * * [or] meaningless * * *."); *Gould, Inc. v. United States,* 935 F.2d at 1274. This decision also comports with several AGBCA decisions which, while not directly interpreting CT4.12, have applied contract section CT4.12 in accord with this opinion. *See Hudson,* AGBCA 86–134–3, 86–2 BCA ¶ 18,935 at 95,650 (1986) (noting that contract section CT4.12 applies to "errors in the timber volume estimates."); *K & K Logging, Inc.,* AGBCA No. 85–271–3, 85–3 BCA ¶ 18,487, at 92,646 (1985) (basing recovery upon the difference between estimates of recoverable volume of Cedar and Pine logs and actual yield).

Applying this construction to the clause, it seems inappropriate for the plaintiff to even apply contract section CT4.12 to the case at bar, let alone recover under that contract section. The plaintiff insists that contract section CT4.12 applies to reduce the contract price because the *acreage* estimate in the contract was incorrect. Even assuming the validity of this assertion, the plain language of contract section CT4.12 applies to under-runs in the total sale volume *of timber,* not overestimates in *acreage.* If the Court were to apply section CT4.12 to the timber vol-

umes in the case at bar, the plaintiff cannot prevail. By the plaintiff's own admission, Stone Forest's yield, or total sale volume, on the Titan Too contract was 7177 MBF. The volume estimate provided in section AT2 of the contract was 6900 MBF. Accordingly, the plaintiff is unable to comply with the requirement that its total sale volume be lower than the estimated volume. This failure to comply completely bars any reduction in contract price under CT4.12. As such, the Court must grant the relief requested by the defendant.

## CONCLUSION

For the reasons stated above, the defendant's Cross–Motion for Summary Judgment is granted, the plaintiff's Motion for Summary Judgment is denied, and the plaintiff's complaint will be dismissed. Accordingly, the clerk of the Court is directed to enter judgment for the Government.

No costs.