**ALL SEASONS CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Witherington Construction Corp., Defendant–Intervenor.**

No. 02–1895 C.

United States Court of Federal Claims.

Jan. 23, 2003.

Donald A. Tobin, Washington, D.C., for the plaintiff.

David D'Alessandris, Washington, D.C. with whom was Assistant Attorney General, Robert D. McCallum, Jr., for the defendant.

Andrew J. Kilpatrick, Jr., Ridgeland, MS., for the intervenor.

Edward G. Gallagher, Vienna, VA., for The Surety Association of America, amicus curiae.

## OPINION

MEROW, Judge.

This is a post-award protest in which plaintiff, All Seasons Construction, Inc. ("All Seasons"), alleges that the Department of Veteran Affairs ("VA") improperly rejected its bid as non-responsive. The matter is now before the Court on plaintiff's requests for preliminary and permanent injunctive relief and the parties' cross-motions for summary judgment on the administrative record. Plaintiff seeks to enjoin the VA from taking any further action with respect to the contract it entered into with Witherington Construction ("Witherington") under Invitation for Bid ("IFB") No. 667–29–02 for the construction of replacement operating rooms. For the reasons below, plaintiff's motions are DENIED and defendant's motion for summary judgment is GRANTED.

## Background

On July 10, 2002, the VA, pursuant to IFB No. 667–29–02, issued a solicitation for a construction project at Overton Brooks Administration Medical Center in Shreveport, Louisiana, Project No. 667–02–042. Administrative Record ("AR") 7. The solicitation called for the demolition and removal of existing buildings and construction of a new addition consisting of four operation rooms. *Id.* The solicitation and four amendments were issued via the Business Opportunities System. AR 11. At the time of the bid opening on August 20, 2002, four bids were received and recorded on the Abstract of Bids. *Id.* All Seasons was the apparent low bidder with its base bid of $3,361,000. *Id.* Witherington was the second-lowest bidder with its bid of $3,505,000. AR 85–86. All Season's bid was submitted with a bid bond, for the penal sum of 20% of the bid price. AR 11; 87–88. Plaintiff's bid bond was submitted on Standard Form 24, which states that "[a]ny person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved." AR 87–88; 48 C.F.R. § 53.338(a). The bid bond was signed by All Seasons' president, Mr. Edward L. Angel, and David A. Montgomery, the attorney-in-fact for Hartford Casualty Insurance Co. ("Hartford"), All Seasons' surety. The surety's seal was crimped next to the attorney-in-fact's signature. AR 11; 87.

The bid bond was accompanied with a power of attorney, which is comprised of three parts. The first part authorizes David A. Montgomery and Dale R. Montgomery of Bossier City, Louisiana as the attorneys-in-fact of the surety and is evidenced by the signatures of Paul A. Bergenholtz, Assistant Secretary, and John P. Hyland, Assistant Vice President of Hartford. AR 11; 89–90. It states that the "Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney." AR 89. The second part is a notary public certification of the signature of Mr. Hyland on the first part of the power of attorney. AR 11; 89–90. The third part of the power of attorney, captioned "Certificate" is signed by Colleen Mastroianni, Assistant Vice President of Hartford who certifies that the "fore-

going is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force and effect as of August 9, 2002." *Id.*

The VA conducted a review of All Seasons' bid for compliance with the nontechnical requirements of the IFB. As a result of the responsiveness review, the contracting officer ("CO"), Mr. Terry Galbraith, rejected All Seasons' bid. AR 90. In a letter dated August 29, 2002, the CO informed plaintiff that its bid was non-responsive because:

> the Bid Bond you provided is accompanied by a Power of Attorney that is not an original and not accompanied by an original certification of validity. In *Schrepfer Industries, Inc.*, B–286825[, 2001 WL 118871] February 12, 2001 the Comptroller General held that a bid bond that was accompanied by a photocopied power of attorney is unacceptable "because [a] photocopied power of attorney does not establish unequivocally at the time of bid opening that the bond would be enforceable against the surety in the event that the bidder fails to meet its obligations." Therefore, on the basis of that authority and in accordance with Federal Acquisition Regulation [sic] (FAR 14.404–2(a) and (k)), your bid bond is rejected because it is non-responsive.

Letter from Terry L. Galbraith, CO, to All Seasons. AR 90.

Subsequently, the VA awarded the contract to the second-lowest bidder, Witherington. On September 13, 2002, plaintiff submitted a protest with the General Accounting Office ("GAO") alleging that the CO's decision was arbitrary and capricious because the power of attorney was a computer printer generated original document with mechanically applied signatures. In its Agency Report to the GAO, the VA argued that All Seasons' bid was non-responsive because the power of attorney lacked an original corporate seal. On December 6, 2002, the GAO

denied All Seasons' protest. *All Seasons Constr., Inc.*, 2002 WL 31761471, B–291166.2, 2002 CPD ¶ 212 (Comp.Gen. Dec. 6, 2002). The GAO concluded that the power of attorney "looks more like a photocopy than a document generated by a computer printer. This fact in itself would be sufficient to justify rejection of the bid under the long standing rule, cited above, that photocopied powers of attorney are not acceptable." *Id.* at *2, n. 1. The GAO went on to uphold the CO's decision on the alternative basis that the mechanically applied signatures were affixed to the power of attorney after it had been generated. Therefore, it was reasonable for the CO to conclude that the power of attorney did not definitively establish at the time of the bid opening that the bond would be enforceable against the surety. Furthermore, the GAO held that the certification on the power of attorney was of questionable validity because the date was inserted after the document was created.[1] On December 17, 2002, plaintiff's complaint and motions for injunctive relief were filed in this Court.

### Discussion

### Standard of Review

### Cross–Motions for Judgment on the Administrative Record

Motions for judgment on the administrative record are reviewed under the rules governing motions for summary judgment. *See Clifton v. United States*, 31 Fed.Cl. 593, 596 (1994), *aff'd*, 66 F.3d 345, 1995 WL 540183 (Fed.Cir.1995). A motion for summary judgment "is an appropriate vehicle to scrutinize an agency's procurement actions because the issues are matters of contractual and regulatory interpretation." *Analytical & Research Tech. v. United States*, 39 Fed. Cl. 34, 43 (1997) (citing *Stone Forest Indus., Inc. v. United States*, 32 Fed.Cl. 424, 426 (1994)). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to

---

1. It is the agency's decision, not the decision of the GAO that is subject to judicial review. *Chas. H. Tompkins Co. v. United States*, 43 Fed.Cl. 716, 719 (1999). Although the GAO upheld the agency's decision on grounds not asserted by the contracting officer ("CO"), this Court lacks authority to uphold an agency action on grounds

not considered by the agency. *OMV Medical, Inc. v. United States*, 219 F.3d 1337, 1343–44 (Fed.Cir.2000). Thus, the Court will confine its review to the CO's conclusion that a photocopied power of attorney rendered the bid non-responsive.

judgment as a matter of law. RCFC 56(c)[2]; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Olympus Corp. v. United States*, 98 F.3d 1314, 1316 (Fed.Cir.1996). A material fact is one "that might affect the outcome of the suit under the governing law ...." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The issue before the Court is "whether, given all the disputed and undisputed facts, a protestor has met its burden of proof that an award is arbitrary, capricious, and so on, or violates to prejudicial effect an applicable procurement regulation." *Tech Systems, Inc. v. United States*, 50 Fed.Cl. 216, 222 (2001) (citing *CCL Serv. Corp. v. United States*, 48 Fed.Cl. 113, 119 (2000)).

### Post–Award Protest

■ Under the standard of review applicable in bid protests, an agency's procurement decisions will be upheld unless shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4). The Court may not intervene unless the disappointed bidder demonstrates that there was no rational basis for the award decision, or demonstrates "a clear and prejudicial violation of applicable statutes or regulations." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed.Cir.2000).

■ In order for plaintiff to prevail on its post-award bid protest, it "must show not only a significant error but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996). The protestor must show "that there was a substantial chance it would have received the contract award but for that error." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.Cir.1999) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir.1996)). The Federal Circuit has held that "because the question of preju-

dice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed.Cir.2003). In this case, if All Seasons' bid was not rejected by the CO as nonresponsive, then it would have likely been awarded the contract as the low-bidder.

Under this standard, the Court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Cube Corp. v. United States*, 46 Fed.Cl. 368, 374 (2000). Rather, the Court's role is to review the agency's decision to determine if it was legally permissible, reasonable, and supported by the facts. *Cube*, 46 Fed.Cl. at 374. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir. 1971)). The Court must confine its review to the administrative record, i.e., the record that was before the decision maker at the time of review. *Advanced Data*, 216 F.3d at 1057.

### The Contracting Officer's Rejection of the Plaintiff's Bid

■ All Seasons argues that the CO's rejection of its bid was irrational because (1) it was unreasonable for the CO to conclude that the power of attorney was a photocopy rather than a preprinted form; (2) assuming that it was a photocopy, the CO's reliance upon irrational decisions by the GAO was not in accordance with the law; (3) it was based on unwarranted speculation about the enforceability of the bid bond; and (4) the IFB, which must state all of the government's requirements, did not prohibit the use of a

---

**2.** RCFC 56 is patterned upon Rule 56 of the Federal Rules of Civil Procedure and is similar in both language and effect. Both rules state the summary judgment is appropriate in situations in which "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c)(2002); Fed.R.Civ.P. 56 (2002).

photocopied power of attorney. Defendant submits that the VA's rejection of plaintiff's bid as non-responsive was rational and in accordance with a line of GAO cases holding that a photocopied power of attorney is invalid.

Under a sealed bidding process, "any bid that fails to conform to the essential requirements of the invitation for bids shall be rejected." 48 C.F.R. § 14.404–2(a). The regulation also states that "when a bid guarantee is required and a bidder fails to furnish the guarantee in accordance with the requirements of the invitation for bids, the bid shall be rejected, except as otherwise provided for in 28–101.4" 48 C.F.R. § 14.404–2(j). A bid guarantee is "a form of security that the bidder (1) will not withdraw a bid within the period specified for acceptance and (2) will execute a written contract and furnish required bonds, including any necessary coinsurance or reinsurance agreements, within the time specified in the bid ... after receipt of the specified forms." 48 C.F.R. § 28.001. The regulation provides that "the contracting officer shall insert a provision or clause substantially the same as the provision at 52.228–1, Bid Guarantee, in solicitations or contracts that require a bid guarantee." 48 C.F.R. § 28.101–2(a).

In this case, the solicitation stated that "a bid guarantee is required in an amount not less than 20 percent of the bid price but shall not exceed $3,000,000. Failure to furnish the required bid guarantee in the proper form and amount, by the time set for the opening of bids, will require rejection of the bid in all cases except those listed in FAR 28.101–4, and may be cause for rejection even then." AR 16.[3] Another provision in the solicitation based on FAR 52.228–1, the Bid Guarantee clause, provided:

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for the opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g.,

bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of the bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements) as required by the bid as accepted.

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3 million, whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

AR 52.

The issue before the Court is whether the CO was justified in relying on the GAO recommendations that bid bonds submitted with a photocopied power of attorney render the bids non-responsive. *Interstate Rock Prods., Inc. v. United States,* 50 Fed.Cl. 349, 358 n. 5 (2001) ("This court will review the decision of the agency to assess its rationality, and by extension the GAO cases on which it relied."). "It would be entirely justifiable for the contracting officer to follow the general policy of acceding to the views of the Accounting Office in this area even though he had another position on the particular issue of legality or propriety." *Honeywell,* 870 F.2d at 648 (cit-

---

**3.** 48 C.F.R. § 28.101–4(c) provides for exceptions where non-compliance with the bid guarantee can be waived. Such circumstances include when only one offer is received, the bid guarantee is received late and late receipt is waived, an

otherwise acceptable bid bond is submitted with a signed bid but the bid bond was not signed, or an otherwise acceptable bid bond is erroneously dated or bears no date. None of these circumstance apply to this case.

ing *John Reiner & Co. v. United States,* 163 Ct.Cl. 381, 325 F.2d 438 (1963), *cert. denied,* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964)); *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1272 (5th Cir.1978) ("When actions of procurement officials . . . are in compliance with a reasonably consistent pattern of GAO determinations, the courts should be extremely reluctant to overturn such actions."). While GAO decisions in procurement cases are not binding on the court, the court may accord deference in recognition of their special expertise. *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991) (citing *Honeywell,* 870 F.2d at 647–648); *Howell Constr., Inc. v. United States,* 12 Cl.Ct. 450, 452 (1987).

"A required bid bond is a material condition of an IFB with which there must be compliance at the time of bid opening; when a bidder submits a defective bid bond, the bid itself is rendered defective and must be rejected as nonresponsive." *Collins Cos.,* 1996 WL 738429, B–274765, 96–2 CPD ¶ 243 (Comp.Gen. Dec. 27, 1996). A bid bond submitted with an invalid power of attorney may render the bid non-responsive "because a only a valid power of attorney would indicate that the surety expressly agreed to be bound to pay the bond signed by the attorney-in-fact." *Ray Ward Constr. Co,* 1994 WL 273222, B–256374, 94–1 CPD ¶ 367 (Comp. Gen. June 14, 1994). Furthermore, "the determination as to the acceptability of a bid bond must be based solely on the bid documents themselves as they appear at the time of bid opening." *Interstate Rock,* 50 Fed.Cl. at 358.

The CO, upon examination of plaintiff's bid, determined that the bid was non-responsive because the bid bond was accompanied by a photocopied power of attorney.[4] The GAO, upon its own review, similarly concluded that the document looks more like a photocopy than a computer generated document. An examination of the power of attorney demonstrates that it is very difficult to tell whether or not it is a photocopy. It appears to contain several characteristics consistent

with that of a photocopy. Therefore, it was neither arbitrary nor capricious for the CO to conclude that it was indeed a photocopy. As a result of the CO's determination at the time of the bid opening, All Season's bid was rejected as non-responsive.

In *Schrepfer Indus., Inc.,* 2001 WL 118871, B–286825, 2001 CPD ¶ 23 (Comp.Gen. Feb. 12, 2001), the GAO concluded that because the protestor's bid was submitted with a photocopied power of attorney and no original authenticating certification, there was no way for the agency to determine if the bid documents had been altered without comparing it to the original. Thus, the agency could not definitively determine at the time of bid opening that the bond would be enforceable against the surety. The agency relied on previous GAO decisions holding that "photocopies of bid guarantee documents generally do not satisfy the requirements for a bid guarantee since there is no way, other than by referring to the originals after bid opening, to be certain that there have not been alterations to which the surety has not consented, and that the government would therefore be secured." *Id.; Kemper Constr. Co.,* 1999 WL 1079793, B–283286.2, 99–2 CPD ¶ 98 (Comp.Gen. Nov. 29, 1999); *Collins,* 1996 WL 738429, *2.

In *Kemper,* 1999 WL 1079793, *3 n. 2, the Comptroller General rejected a bid submitted with a faxed power of attorney even though the language on the power of attorney authorized signature and sealing of a power of attorney by facsimile. The GAO overruled prior cases suggesting that the phrase "affixed by facsimile" sufficiently demonstrates the surety's intent to be bound by a facsimile or photocopied power of attorney. Instead, the attached language would only include signatures produced by mechanical means. *Id.* (citing *Collins,* 1996 WL 738429, *3; *Frank & Son Paving, Inc.,* 1996 WL 501377, B–272179, 96–2 CPD ¶ 106 (Comp.Gen. Sept. 5, 1996)). In a recent decision, the Court of Federal Claims held that the Army Corps of Engineers rejection of a photocopied power of attorney in reliance on

---

4. The parties disagree as to whether the power of attorney is a photocopy. However, the issue before the Court is whether it was reasonable for

the contracting officer to conclude that it was a photocopy.

*Schrepfer, Kemper,* and *Collins* was rational. *See Merton v. United States,* No. 02–237C (Fed.Cl. May 13, 2002).

The instructions to Standard Form 24 state that "any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved." AR 88. The power of attorney is provided as "evidence that the named attorney-in-fact is authorized to sign the bid bond on the surety's behalf, binding the surety to its terms." *Brothers Constr. Co.,* 1997 WL 699061, B–278042, 97–2 CPD ¶ 135 (Comp.Gen. Nov. 10, 1997). In addition, the administrative record and the *amicus curiae,* the Surety Association of America, in its submissions, demonstrate that the surety industry was fully aware of the GAO decisions rejecting photocopied powers of attorney as insufficient authority and sought amendments to change the regulations. Other bidders, including Witherington, submitted bid bonds with original powers of attorney. Although not without controversy, it is not irrational to conclude that a photocopied power of attorney does not provide the necessary evidence of authority to bind the surety. Defendant points out that "legal instruments such as paychecks are only binding when bearing original or facsimile signatures and that a photocopy signature would be insufficient to bind the maker." Def.'s Mot. for J. 18 (citing *Merton v. United States,* No. 02–237C (Fed.Cl. May 13, 2002)). However, it is not clear that photocopied powers of attorney always fall under the same cloud of doubt. While each check is a one-use document, a power of attorney is usually not so restricted and is intended to provide authority for the attorney-in-fact to bind the surety in transactions over a specified period of time.

It is apparent that the GAO decisions holding that photocopied powers of attorneys always render a bid non-responsive has generated significant controversy in the surety industry. AR 107–199. As a result of the rejection of All Seasons' bid, the VA must pay an additional $144,000 for the construction work on its hospital. Plaintiff contends that an original bid bond with the handwritten signature of the attorney-in-fact and seal of the surety company should be presumptively valid and enforceable against the surety unless an independent reason creates doubt as to the validity of the bid bond or the authority of the attorney-in-fact. In other words, plaintiff argues that the photocopied power of attorney should have been accepted because there was nothing in the bid bond to raise a genuine question of authenticity.

Plaintiff persuasively notes that the GAO decisions are in conflict with other areas of the law such as the Federal Rules of Evidence ("FRE"). For example, FRE 1003 provides that a "duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." One commentator has noted that "copying machines and other familiar devices for reproducing writings and recordings have provided us with new ways of enhancing the accuracy of copies. Article X expands coverage of the Best Evidence Rule to reach all of these devices, but pays tribute to their accuracy by making duplicates presumptively acceptable." SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL, Vol. 5, § 1003.02[1] at p. 1003–2 (8th ed.2002). The Federal Business Records Act provides that, if in the regular course of business an entity makes copies of originals, the copy "when satisfactorily identified, is as admissible in evidence as the original itself . . . ." 28 U.S.C. § 1732. There are several other federal statutes that allow for copies in the hands of public agencies to be treated as originals. *See e.g.,* 31 U.S.C. § 9306(b) ("A copy of the power of attorney may be used as evidence in a civil action under section 9307 of this title."); 40 U.S.C. § 3133(a) (providing that a contractor is entitled to a certified copy of the submitted performance and payment bonds "which copy is prima facie evidence of the contents, execution, and delivery of the original.").

As other commentators have noted, "bid bonds and bid guarantees add an incredible amount of complexity and cost to sealed bid procurement. It is extremely doubtful

whether such cost and complexity is justified by whatever benefits the Government receives from bonds and guarantees." JOHN CIBINIC JR., & RALPH C. NASH, JR., BID BONDS AND BID GUARANTEES: THAT TAIL IS STILL WAGING, 16 No. 3 NASH & CIBINIC REP. P. 12 (March, 2002). In many cases, otherwise acceptable bids submitted by the apparent low bidders have been rejected because of deficiencies in the required bid bond. The government is then left paying a higher price for the contract with no right to seek recovery of the difference from the rejected low bidder. Instead, plaintiff argues that efficiency and judicial economy might best be enhanced by assuming the validity of a duplicate power of attorney. The onus for challenging an award to a bidder with a defective bid bond would then fall mainly upon the next lowest bidder. The second lowest bidder would have a strong inducement to bring a challenge if there was evidence to suggest that the bid bond was defective. On the other hand, defendant argues that the GAO has a reasonable basis for its position that the award goes to the lowest bidder that is in full compliance with the bid requirements at the time of bid opening. The government should not have to rely upon the attorney-in-fact's apparent authority or subsequent legal proceedings to enforce the bid obligations. In the end, it is not for the Court to establish procurement policy. Plaintiff's remedy would be to seek an amendment to the FAR that explicitly details the requirements for a valid power of attorney. This would greatly serve to reduce confusion among the surety industry while ensuring that the government pays the lowest-available price.

Ultimately however, the VA and the GAO decisions, that facsimile or photocopied powers of attorney should be rejected based on the rationale that the documents could have been manipulated without the alterations being apparent upon examination, cannot be called irrational. Bid bonds provide a greater opportunity for fraud than payment and performance bonds because bid bond sureties are rarely called upon to reimburse the government. The bid bond surety's obligations are satisfied once payment and performance bonds are provided and the contract is executed. In most situations, the bid bond becomes a moot issue and it is unlikely that any fraud will be revealed.[5] It was not irrational for the Comptroller General to adopt a firm rule that a CO could easily apply to determine bid bond deficiency instead of relying on a totality of the circumstances test. The CO would only be able to determine if there had been any alterations by comparing the photocopy to the original power of attorney. The fact that the IFB does not expressly prohibit a photocopied power of attorney does not render the CO's actions irrational. In this case, other bidders such as Witherington submitted bid bonds accompanied by an original power of attorney. The GAO decisions cannot be found to be irrational and the CO did not act arbitrarily or capriciously in adopting the GAO's recommendations that photocopied power of attorneys render the bid non-responsive.

Plaintiff argues that this Court should independently consider whether Hartford would actually be bound by the bid bond. However, the CO did not determine the actual enforceability of All Seasons' bid bond when he reviewed the bid and determined it was non-responsive. There is nothing that would prevent All Seasons' or the surety from relying on a photocopied power of attorney as a defense to enforcement of the bond. The issue before the Court is whether it was rational for the CO to reject the bid bond as non-responsive based on previous GAO recommendations that the absence of an original power of attorney fails to provide sufficient authority to bind the surety. The Court "is not in a position to speculate as to whether another court would find the bid bond enforceable in the event that the surety and/or

5. *Cf. Cincinnati Ins. Co. v. City of Talladega*, 552 F.2d 128 (5th Cir.1977) (denying claim brought by surety seeking declaratory judgment that payment and performance bonds were not valid and enforceable against the surety where attorney-in-fact submitted photocopied power of attorney containing alterations unknown to surety). In that case, the attorney-in-fact had altered the power of attorney to enter in to a surety bond for an amount in excess of his authority under a written agency agreement. The court found that the surety was bound because attorney-in-fact had actual authority as the surety's licensed agent.

contractor attempted to avoid enforcement." *Interstate Rock,* 50 Fed.Cl. at 361.

## CONCLUSION

The Court finds that plaintiff's claims of prejudicial error in the procurement process are not supported by the administrative record. Therefore, injunctive relief is not available. Accordingly, it is **ORDERED**:

(1) Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction are **DENIED**;

(2) Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**;

(3) Defendant's Motion for Judgment on the Administrative Record is **GRANTED**;

(4) Final Judgment shall be entered **DISMISSING** the Complaint, with **NO COSTS** assessed.