HAWAIIAN DREDGING
CONSTRUCTION CO.,
INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Nova Group, Inc., Defendant–Intervenor,

and

Triton Marine Construction Corp.,
Defendant–Intervenor.

No. 03–2763C.

United States Court of Federal Claims.

Jan. 9, 2004.

Douglas C. Proxmire, Washington, DC, for plaintiff. Robert K. Tompkins and Michael J. Schaengold, Patton Boggs LLP, of counsel.

Doris S. Finnerman, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

Carol L. O'Riordan, Washington, DC, for defendant-intervenor Nova Group, Inc. Jonathan Williams and Brian T. Scher, The O'Riordan Bethel Law Firm, LLP, of counsel.

John C. Dippold, Seattle, WA, for defendant-intervenor Triton Marine Construction Corp. Stephen L. Nourse, Carney Badley Spellman, P.S., of counsel.

## OPINION

MILLER, Judge.

This is a post-award bid protest before the court after argument on plaintiff's motion for summary judgment and defendant's and intervenors' cross-motions for judgment on the administrative record. Plaintiff submitted bids on two separate dredging contracts with bonds accompanied by powers of attorney

containing mechanically applied signatures. The contracting officer determined both bids to be nonresponsive because the powers of attorney lacked original signatures. After being denied relief through an agency-level protest, plaintiff brought the present action in the Court of Federal Claims. The issue to be decided is whether the contracting officer had a reasonable basis for rejecting plaintiff's bids on the ground that the documents appointing the officer to execute the bid bonds and the resolutions attesting that the appointment was still in effect lacked original, or "wet," signatures. Because the contracting officer also invoked the authority of a decision of the Comptroller General that a mechanically applied signature is acceptable, provided that it is affixed after the document otherwise is complete, the court also decides whether the contracting officer's reliance on that decision was reasonable.

## FACTS

The relevant undisputed facts derive from the administrative record. The U.S. Department of the Navy, Construction Contracts Branch, Naval Facilities Engineering Command (the "Navy"), issued two invitations for bids ("IFBs") for repair work to be performed on a wharf and docks at the Naval Station in Pearl Harbor, Hawaii. IFB N62742–02–B–1408 was issued on August 5, 2003 for repair of Alpha Wharf 1 (the "Alpha contract"). On August 12, 2003, the Navy issued IFB N62742–03–B–1309 for repair of Bravo Docks 15–19 (the "Bravo contract").

Hawaiian Dredging Construction Co., Inc. ("plaintiff"), submitted timely bids for both the Alpha and Bravo contracts on September 16 and 17, respectively. Both of the IFBs incorporated 48 C.F.R. (FAR) § 52.228–1 (Sept.1996), which required a potential contractor to submit with its bid a guarantee equal to 20 percent of the total bid price, which could be in the form of a bond "supported by good and sufficient surety." [1]

The applicable Federal Acquisition Regulation ("FAR") was supplemented by Federal Acquisition Circular ("FAC") § 5252.228–9302 (Jan.1996), also incorporated into both IFBs, which sets forth the requirements for submitting a bid bond. A bidder must submit a bid bond using Standard Form ("SF") 24 "executed by a surety company holding a certificate of authority from the Secretary of the Treasury as an acceptable surety." In addition to the SF 24, "[t]he bid guarantee bond shall be accompanied by a document authenticating the agent's authority to sign bonds for the surety company."

The SF 24 submitted with both of plaintiff's bids was signed by Richard Adair, Attorney–in–Fact for the surety that issued the bid bond, American Home Assurance Company ("American Home"). To the right of Mr. Adair's signature, American Home's raised corporate seal was embossed onto the document.

Along with the SF 24, plaintiff submitted a separate document which contained three sections: a "Power of Attorney," a notary attestation, and a "Certificate." A copy of the Power of Attorney document for the Alpha contract is appended hereto as Appendix A. This separate document was printed in blue ink to differentiate it from a photocopy, but nonetheless it was a mechanical reproduction, rather than an original document.

The first section of the document is a Power of Attorney naming Richard Adair, among others, as attorney-in-fact. The Power of Attorney recites that, as attorney-in-fact, Mr. Adair has the authority to "execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity ... and to bind" American Home thereby. The Power of Attorney is dated January 4, 2002, and contains the mechanically applied signature of Mark A. Mallonee, Vice President of American Home. To the left of Mr. Mallonee's signature on the Power of Attorney appears the facsimile of American Home's corporate seal.

The second section of the document is a notary public's attestation of Mr. Mallonee's signature. The notary's signature is also a

---

1. The bid bond of unsuccessful bidders is returned after the bids are opened and to successful bidders after the contract is performed. If the successful bidder fails to complete the contract,

the bid bond is available to pay the difference, if any, in having another contractor complete the contract. FAR § 52.228–1.

mechanical reproduction, in the same distinctive blue ink, dated the same as Mr. Mallonee's signature, January 4, 2002.

The third section of the document is a Certificate in the same blue ink as the power of attorney and notary attestation. The Certificate contains excerpts of resolutions adopted by the board of directors of American Home. The first resolution authorizes the appointment of attorneys-in-fact to execute bid bonds and affirms their authority to bind American Home. The second resolution states that American Home is bound by facsimile signatures[2] and corporate seals on a power of attorney, and any certificate relating thereto, as were present in the documents submitted with plaintiff's bids.

The third resolution in the Certificate authorizes an attorney-in-fact to insert onto the Certificate a date upon which the board resolutions are still in effect, provided that the attorney-in-fact delivers a secretarial certification to that effect.

Included in the Certificate is a certification by Elizabeth M. Tuck, Secretary of American Home, that the resolutions and the powers of attorney are still in effect. Ms. Tuck's signature was mechanically applied to the certificate and appears in the same blue ink as the rest of the document. To the left of Ms. Tuck's signature is a facsimile of American Home's corporate seal. Both of plaintiff's Certificates are dated above Ms. Tuck's signature, in black typewritten ink, September 8, 2003, for the Alpha contract and September 17, 2003, for the Bravo contract. To the left of the Ms. Tuck's signature American Home's raised corporate seal is embossed onto both documents.

On September 16, 2003, the Navy opened the sealed bids for the Alpha contract. Plaintiff had submitted the lowest bid of $3,783,000.00, with the next lowest bid of $4,987,540.00 submitted by Triton Marine Construction Corporation ("Triton"). The Navy opened the sealed bids for the Bravo contract on September 17, 2003, which re-vealed that plaintiff was also the lowest bidder at $8,020,000.00. The next lowest bidder for the Bravo contract was Nova Group, Inc. ("Nova"), which bid $8,547,747.00.

Five companies bid on the Alpha contract, all of which, save plaintiff, submitted powers of attorney with wet, or original, signatures. On the Bravo IFB, four companies submitted bids, and each bid, other than plaintiff's, contained a power of attorney with a wet signature.

In a sealed bidding process, "[a]ny bid that fails to conform to the essential requirements of the invitation for bids shall be rejected." FAR § 14.404–2(a) (2002). More specific to this case, "[w]hen a bid guarantee is required and a bidder fails to furnish the guarantee in accordance with the requirements of the invitation for bids, the bid shall be rejected, except as otherwise provided for in 28.101–4." FAR § 14.404–2(j).

Contracting Officer Stanley Louis notified plaintiff by two letters dated September 22, 2003, that both of plaintiff's bids had been found to be nonresponsive and therefore ineligible for consideration. As his reason for rejecting the bids, Mr. Louis stated "the signatures on the Power of Attorney accompanying the [SF 24s] were not original signatures." He cited to the Comptroller General's decision in *All Seasons Construction, Inc.*, B–291166.2, 2002 CPD ¶ 212, 2002 WL 31761471, 2002 U.S. Comp. Gen. LEXIS 208 (Dec. 6, 2002). Mr. Louis also rejected the raised corporate seal on the powers of attorney as an inadequate substitute for a "properly signed" power of attorney. For this proposition Mr. Louis cited *Schrepfer Industries, Inc.*, B–286825, 2001 CPD ¶ 23, 2001 WL 118871, 2001 U.S. Comp. Gen. LEXIS 4 (Feb. 12, 2001).

Plaintiff sent Contracting Officer Louis a letter on September 24, 2003, seeking reconsideration of the Navy's decision. Plaintiff argued that *All Seasons Construction* was factually distinct from the present case in several aspects: The powers of attorney

---

**2.** A facsimile signature is a "signature produced by mechanical means." *Global Eng'g*, B–250558, 93–1 CPD ¶ 31 1993 WL 7015 at *3 n. 2, 1993 U.S. Comp. Gen. LEXIS 25 at *6 n. 2 (Jan. 11, 1993) (quoting Webster's Third New International Dictionary 813 (3d ed.1966)). Given this usage by the parties and the General Accounting Office, the terms mechanically applied signature and facsimile signature are used interchangeably.

were in distinctive blue ink—obviously not a photocopy; a raised corporate seal appeared on the powers of attorney; and the powers of attorney contained a board resolution binding the surety to the facsimile signatures on the certificates, as well as on the powers of attorney.

Mr. Louis responded by letter dated September 26, 2003, in which he reiterated that, per "our controlling authorities," "pre-printed" powers of attorney are not acceptable, *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471, 2002 U.S. Comp. Gen. LEXIS 208, and a raised corporate seal does not overcome the lack of proper signatures, *Schrepfer*, 2001 CPD ¶ 23, 2001 WL 118871, 2001 U.S. Comp. Gen. LEXIS 4. Mr. Louis notified plaintiff by letter dated September 24, 2003, that the Alpha contract was awarded to Triton for $4,987,540.00. By letter dated September 26, 2003, plaintiff was informed that Nova had been awarded the Bravo contract for $8,547,747.00.

Plaintiff protested both contract awards on October 1, 2003, by submitting letters to the Navy commander of the construction contracts branch, in accordance with FAR § 33.103 and the terms of the IFBs. In its protest letter, plaintiff cited factual and legal arguments as the basis for reconsideration. On October 27, 2003, plaintiff submitted additional legal authority to the Navy, and on November 6, 2003, plaintiff submitted a chronology of American Home's development and use of its power of attorney form.

Radml(S) G.A. Engle, Commander of Naval Facilities Engineering Command, Pacific Division, denied plaintiff's protest of the Alpha contract award by (undated) letter, invoking the same rationale as Mr. Louis. On November 18, 2003, Frances L. Sullivan, director of the Naval Facilities Engineering Command, sent plaintiff an almost identical letter denying plaintiff's protest of the Bravo award.

Plaintiff commenced the present action on December 2, 2003, after plaintiff and the Navy agreed to stay performance of the contracts on November 26, 2003, pending plaintiff's protest in the Court of Federal Claims. By agreement of the parties during an off-the-record status conference on December 3,

2003, the stay was extended to today's date in order to allow for expedited briefing and argument. After Triton and Nova intervened as party defendants, plaintiff moved for summary judgment, to which defendant, Triton, and Nova responded with cross-motions for judgment on the administrative record.

## DISCUSSION

### 1. *Jurisdiction and standard of review*

Jurisdiction in the Court of Federal Claims is prescribed by the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000), which allows a protestor to challenge "the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." The court evaluates the procuring agency's conduct to determine whether the Government's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.2003) (applying "arbitrary and capricious" standard of section 706 under 28 U.S.C. § 1491(b) in post-award bid protest action where Federal Circuit decided "whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' ").

The test under the arbitrary and capricious standard is whether "the contracting agency provided a coherent and reasonable explanation of its exercise and discretion." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed.Cir.2001) (citations omitted). " 'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.' " *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971)). Correspondingly, if a protester does satisfy its burden in proving the requisite violation, the court may award equitable relief pursuant to 28 U.S.C. § 1491(b)(2).

Before the merits of plaintiff's protest can be considered, plaintiff must show that the Navy's error was prejudicial. *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed. Cir.1996). The required showing is that there was "a substantial chance it would have received the contract award but for that error." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (citations omitted). Plaintiff's proof should establish that its "chance of securing the award ... [was not] insubstantial," *Information Technology,* 316 F.3d at 1319, and that a "reasonable likelihood" was present that it would have received the award but for the error, *Data Gen. Corp.,* 78 F.3d at 1562.

For both the Alpha and the Bravo bids, plaintiff submitted the lowest bid. The next lowest bid for the Alpha contract was $1,204,540.00 more than plaintiff's; for the Bravo contract, the next lowest bid was $527,747.00 more than plaintiff's. Having submitted the lowest bid for both contracts, a substantial likelihood exists that plaintiff would have been awarded each of the contracts had its bids not been determined nonresponsive.[3] Plaintiff's standing derives from the prejudice effected by the nonresponsive determination, which prevented plaintiff from being awarded the contracts for which it had submitted the lowest bids. Accordingly, plaintiff has standing to pursue this protest.

Plaintiff argues that the contracting officer's nonresponsive determination is unreasonable for three reasons: The decisions of the Comptroller General that the contracting officer relied on are factually distinct from the case at bar and thus should not have led to a nonresponsive determination; even if these decisions are not factually distinct, reliance on them was unreasonable, and they should have been ignored; and, finally, in making its determination, the contracting officer ignored a contrary line of decisions issued by the General Accounting Office (the "GAO") that has allowed mechanically applied signatures with a concomitant undertaking to be bound thereby.

Defendant and intervenors respond that plaintiff's bids properly were determined to be nonresponsive because the signatures on the powers of attorney were not original and because the signatures were generated as part of the documents and not affixed after the documents were created. Mechanically applied signatures do not give adequate assurance to the contracting officer that the surety intends to be bound. The contracting officer reasonably relied on GAO decisions to that effect when determining plaintiff's bids to be nonresponsive, and thus his decision was reasonable.

In addition to arguing that the contracting officer's decision was rational, defendant-intervenor Nova argues that plaintiff lacks standing to protest the award. Nova frames plaintiff's protest as a challenge to the IFBs' bond requirement, and, as such, untimely. The court takes a different view of plaintiff's claim.[4] Plaintiff is not challenging the IFBs' bonding requirements; rather, plaintiff submitted valid bid bonds and documents authenticating the agent's authority to sign bid bonds on behalf of the surety. What plaintiff does contest is the contracting officer's determination that the documents accompanying the bid bonds did not establish unequivocally that the person who signed the bid bonds was authorized to bind the surety.

### 2. *Requirements for a bid bond*

A bid guarantee is a means of security to ensure that a bidder will not withdraw its bid and will execute and perform the contract. FAR § 28.001. FAR § 28.101–2(a) commands contracting officers to "insert a provision or clause substantially the same as the provision at 52.228–1," which the contracting officer inserted into the Alpha and Bravo IFBs. FAR § 52.228–1 provides:

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time

---

**3.** Defendant correctly argues that, should plaintiff meet its burden in this protest, plaintiff still must await the contracting officer's determination that its bids are responsive to the IFBs and that plaintiff is a responsible contractor before it

may be awarded either contract. *See* discussion *infra* at p. 318.

**4.** Defendant did not question plaintiff's claim on jurisdictional grounds.

set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds,

    (1) to unsuccessful bidders as soon as practicable after the opening of bids, and

    (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000, whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 30 days after award of the contract, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

The contracting officer set forth the requirements for submitting a bid bond by inserting into both IFBs FAC § 5252.228–9302 (Jan.1996), which provides:

To assure the execution of the contract and the performance and payment bonds, each bidder/offeror shall submit with its bid/offer a guarantee bond (Standard Form 24) executed by a surety company holding a certificate of authority from the Secretary of the Treasury as an acceptable surety, or other security as provided in FAR Clause 52.228–1, "Bid Guarantee." Security shall be in a penal sum equal to at least 20 percent of the largest amount for which award can be made under the bid

submitted, but in no case to exceed $3,000,000. The bid guarantee bond shall be accompanied by a document authenticating the agent's authority to sign bonds for the surety company.

FAC § 5252.228–9302, consonant with FAR § 52.228–1, recites two requirements for submitting a bid bond: an executed SF 24 and a "document authenticating the agent's authority to sign bonds for the surety company."

Similar instructions also appear in the SF 24: "An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved." The instructions require corporate sureties to be on the Department of the Treasury's approved list and when "executing the bond [to] . . . affix their corporate seals."

Both the regulations and the SF 24 on its face require that the signatory to the SF 24 be a person. Moreover, both require that the individual signing the document on behalf of a corporate surety furnish evidence of his authority. However, neither requires an original signature on the document that serves as evidence of authority.

Although it is undisputed that plaintiff's SF 24s were properly submitted, the court must resolve whether the contracting officer had a reasonable basis for rejecting plaintiff's bid because the authenticating documents were inadequate.

3. *Whether the contracting officer was reasonable in rejecting plaintiff's computer-generated powers of attorney and certificates with mechanically applied signatures*

The overarching issue is whether the contracting officer reasonably concluded that he could not establish unequivocally at the time of bid opening that plaintiff's bid bonds were enforceable against the surety. *See* Def.'s Br. filed Dec. 23, 2003, at 10, 13; *Schrepfer,* 2001 CPD ¶ 23, 2001 WL 118871, at *2, 2001 U.S. Comp. Gen. LEXIS 4, at *3 ("The determinative question as to the acceptability of

a bid bond is whether the bid documents, including the power of attorney appointing an attorney-in-fact with authority to bind the surety, establish unequivocally at the time of bid opening that the bond is enforceable against the surety should the bidder fail to meet its obligations."). Specifically, the court must determine whether plaintiff's powers of attorney and certificates, with mechanically applied signatures in blue ink and accompanying raised corporate seals, provided a reasonable basis for finding plaintiff's bids nonresponsive.

### 1) The contracting officer's decision

The contracting officer in his September 22, 2003 letters rejecting plaintiff's bids put forth the reason that the signatures on the powers of attorney accompanying the SF 24s "were not original." After noting that the powers of attorney did contain the embossed corporate seal of American Home, the contracting officer cited decisions of the GAO as authority for rejecting plaintiff's bids:

As determined by [*All Seasons Constr., Inc.*, B–291166.2, 2002 WL 31761471, 2002 CPD ¶ 212, 2002 U.S. Comp. Gen. LEXIS 208 (Dec. 6, 2002)] signatures generated as part of the Power of Attorney, as opposed to being affixed to the document after its generation, do not serve to validate the document. Further, a raised corporate seal is not a substitute for a properly signed Power of Attorney, as decided by [*Schrepfer Indus.*, B–286825, 2001 CPD ¶ 23, 2001 WL 118871, 2001 U.S. Comp. Gen. LEXIS 4 (Feb. 12, 2001)].

In his September 26, 2003 response to plaintiff's request for reconsideration, the contracting officer further explained: "[R]ulings published by the [GAO] significantly impact and guide us in our decision-making." The contracting officer reiterated that *All Seasons* and *Schrepfer* "are our controlling authorities." According to those cases, "for

a mechanically-produced signature to be valid on the power of attorney, 'it must be affixed to the power of attorney *after* the power of attorney has been generated.'" (quoting *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471, at *3, 2002 U.S. Comp. Gen. LEXIS 208, at *6) (emphasis added by contracting officer).

In denying plaintiff's subsequent protest to the Navy, the Navy further explained in its November 18, 2003 letter the contracting officer's reason for rejecting plaintiff's bids: "[I]t is not prudent for the Government to accept a Power of Attorney with mechanically produced signatures generated as part of the printed document. The documentation that you provided did not unequivocally establish at the time of bid opening, that your bond was enforceable against the surety."

### 2) GAO decisions

Given the diverse factual scenarios that appear before the GAO, its decisions traditionally have been accorded a high degree of deference by the courts, particularly those involving bid protests. *See E.W. Bliss Co. v. United States*, 33 Fed.Cl. 123, 135 (1995), *aff'd*, 77 F.3d 445 (Fed.Cir.1996). Although GAO decisions are not binding upon the Court of Federal Claims, they may be considered as "expert opinions," which the court should prudently consider. *See Thompson v. Cherokee Nation of Okla.*, 334 F.3d 1075, 1084 (Fed.Cir.2003). As a general proposition, if the court finds that underlying GAO decisions present a reasonable interpretation of the law and factual record, then persuasive weight shall be accorded to their rationale. *See Honeywell, Inc.*, 870 F.2d at 648. The contracting officer relied on two decisions as "controlling." Thus, the reasonableness of the contracting officer's decision is dependent on whether these decisions were themselves reasonable.[5]

---

**5.** Intervenor–Triton's brief restated the issue, as follows: "Whether the rejection of [plaintiff's] bid was reasonable when Comptroller General decisions have consistently held that mechanically-applied signatures to a power of attorney are valid and binding only when affixed after the document has been generated, and the signatures contained in the power of attorney submitted with [plaintiff's] bid bond were not affixed after

the document was generated, but instead were generated as part of the document." Triton's Br. filed Dec. 23, 2003, at 1–2. Even the contracting officer did not take the position that the Comptroller General "consistently" has held any such thing. Only one decision has so ruled, as discussed *infra* at 314. Intervenor–Nova hyperbolizes that plaintiff's argument "flies in the face of

■ The contracting officer cited two GAO cases in rejecting plaintiff's bid, *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471, 2002 U.S. Comp. Gen. LEXIS 208, and *Schrepfer*, 2001 CPD ¶ 23, 2001 WL 118871, 2001 U.S. Comp. Gen. LEXIS 4. In *All Seasons* the GAO denied the protest of a bidder that submitted a power of attorney which the GAO (and subsequently the Court of Federal Claims) believed to be photocopied. The GAO explained that, "[u]nless accompanied by an original certification from a current officer of the surety attesting to its authenticity and continuing validity, a photocopied power of attorney does not satisfy the requirement for a clearly enforceable guarantee." *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471 at *3, 2002 U.S. Comp. Gen. LEXIS 208, at *4–5; *see also All Seasons Constr., Inc. v. United States*, 55 Fed.Cl. 175, 179 (2003) (denying bid protest in same case on basis that rejected bid contained photocopied power of attorney).[6]

The power of attorney in *All Seasons* included an affirmation by the surety to be bound "by any mechanically applied signatures." *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471 at *2, 2002 U.S. Comp. Gen. LEXIS 208, at *2. It also contained a certificate in which an assistant vice president certified that the power of attorney was still in effect. However, both the power of attorney and the certificate contained computer printer-generated signatures. Because neither the power of attorney nor the certificate bore signatures that had been applied after its generation, they were deemed not to be original documents. Although facsimile corporate seals appeared on both the power of attorney and certificate, the document did not contain an original embossed corporate seal. Ultimately, the GAO concluded that the document "looks more like a photocopy than a document generated by a computer printer." *Id.* at *3 n. 1, 2002 U.S. Comp. Gen. LEXIS 208, at *5 n. 1.

In *Schrepfer* the GAO denied the protest of a rejected bidder that submitted a photocopied power of attorney. The power of attorney in *Schrepfer* was not accompanied

years of case law from both this Court and the [GAO]." Nova's Br. filed Dec. 23, 2003, at 2.

Even though only one GAO decision is relied on in this case, the court should disassociate itself from the proposition that following " 'a reasonably consistent pattern of GAO determinations' " renders a procurement decision reasonable. *See All Seasons Constr. v. United States*, 55 Fed.Cl. 175, 180 (2003) (quoting *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1272 (5th Cir. 1978)).

The *locus classicus* of this proposition is *Kinnett*, which was decided before the Court of Federal Claims came into existence and was not endorsed by the United States Court of Claims nor later the Federal Circuit. Determining whether GAO decisions are "reasonably consistent" invites subjectivity into a legal analysis. It is sufficiently difficult to determine whether the rule of GAO decisions is reasonable without hinging that determination on whether a line of decisions is reasonably consistent. This court proceeds merely to determine what the GAO decisions say and whether they are reasonable.

In any event, the heightened deference to GAO decisions suggested by *Kinnett* is suspect. The Fifth Circuit in *Kinnett* cited one of its cases, *Hayes Int'l Corp. v. McLucas*, 509 F.2d 247, 258 n. 17 (5th Cir.1975), for the proposition that deference should be given to GAO and board of contract appeals decisions as manifesting "accepted agency practice." 580 F.2d at 1271 n. 22. The Fifth Circuit in *Hayes* cited decisions from the United States Court of Appeals for the District of Columbia Circuit—*Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1314–15 (D.C.Cir.1971), and *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971). The court in *M. Steinthal* did not state, as *Hayes* represents, that "courts must pay particular respect" to agency procurement decisions. *Hayes*, 509 F.2d at 258 n. 17. The D.C. Circuit admonished in *M. Steinthal* that a court should exercise with restraint its power to enjoin a procurement, taking into account not only the discretion reposed in the contracting officer, but also, *inter alia*, rulings of the Comptroller General—an altogether more modest proposition. In summarizing the footnote in *Hayes*, which itself had attempted to summarize *M. Steinthal*, *Kinnett* brought forth the notion that, when actions of procurement officials are "in compliance with a reasonably consistent pattern of GAO determinations, the courts should be extremely reluctant to overturn such actions." 580 F.2d at 1272.

Subjectivity does not lurk in recognizing "the long-standing rule" of the GAO, such as its rule that photocopied powers of attorney are not acceptable. *See All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471, at *3 n. 1, 2002 U.S. Comp. Gen. LEXIS 208, at *5 n. 1.

6. The Court of Federal Claims in *All Seasons* only affirmed the rationale based on the photocopied power of attorney, because the contracting officer made that the centerpiece of his non-responsiveness determination.

by an updated certification from the surety, but a photocopied certificate stating that the power of attorney was still in effect. Although the power of attorney itself bore an original embossed corporate seal, the GAO ruled that the corporate seal itself was not a substitute for a properly signed power of attorney.

It is undisputed that plaintiff's powers of attorney were not photocopies. However, the signatures were generated as part of a mechanically produced documents in blue ink. Although the documents at issue in *All Seasons* and *Schrepfer* were most likely photocopies, the GAO in *All Seasons* took occasion to prescribe a rule that mechanically generated signatures are acceptable, but only when affixed after the power of attorney has been generated. Both of plaintiff's powers of attorney contained an original raised corporate seal embossed onto the document, a confirmatory indicium of assurance that was lacking with the photocopied power of attorney in *All Seasons*. Unlike both *All Seasons* and *Schrepfer*, plaintiff's powers of attorney contained a certificate from the surety, in the form of a board resolution, stating that it would be bound by a mechanically applied signature on a power of attorney or any certificate relating thereto. In contrast, *All Seasons* contained only a statement of intent on behalf of the surety to be bound by a mechanically produced signature on the power of attorney itself, but not so bound to the signatures on the certificate affirming the continued validity of the power of attorney.

The GAO previously approved the use of a facsimile document to establish the authority of an attorney-in-fact. *Ray Ward Constr. Co.*, B–256374, 94–1 CPD ¶ 367, 1994 WL 273222, 1994 U.S. Comp. Gen. LEXIS 543 (June 14, 1994). In *Ray Ward* the Internal Revenue Service awarded a contract to a bidder that had submitted a facsimile power of attorney, after which the second-lowest bidder filed a protest. The GAO reiterated that, "since a facsimile version is not the original, there is usually no way to be certain that unauthorized alterations have not been made without referring to the original documents after bid opening." *Id.* at *3, 1994 U.S. Comp. Gen. LEXIS 543, at *5. Howev-

er, in denying the protest, the GAO stated that "where there is evidence submitted with the bid which unequivocally demonstrates the surety's intent to be bound by a facsimile or photocopy version, the agency may reasonably determine the bid bond to be acceptable." *Id.*

The successful bidder in *Ray Ward* submitted along with its bid bond a document containing a power of attorney, notary certification, and corporate certificate-the same as plaintiff in the case at bar. The GAO ruled that the inclusion of the corporate certificate allowing facsimile signatures, along with an original embossed corporate seal, confirmed that the surety intended to be bound. In contrast to prior cases involving photocopies, the GAO determined that, given the three-part document containing a corporate certificate agreeing to be bound by facsimile signatures, "there is clear evidence that [the bidder's] surety intended to be bound by the facsimile signature." *Id.* at *3, 1994 U.S. Comp. Gen. LEXIS 543, at *7; *see also Fiore Constr. Co.*, B–256429, 94–1 CPD ¶ 379, 1994 WL 313469, 1994 U.S. Comp. Gen. LEXIS 553 (June 23, 1994) (denying similar protest where awardee submitted power of attorney and certificate with facsimile signatures and document contained certificate binding surety to facsimile signatures).

The GAO summarized the law in *All Seasons*, stating that a photocopied power of attorney is only valid if accompanied by an original certification "attesting to its authenticity and continuing validity." *All Seasons*, 2002 CPD ¶ 212, 2002 WL 31761471, at *3, 2002 U.S. Comp. Gen. LEXIS 208, at *4–5 (citing *Daley Corp.-Cal. Commercial Asphalt Corp.*, B–274203.2, 96–2 CPD ¶ 217, 1996 WL 705193, 1996 U.S. Comp. Gen. LEXIS 609 (Dec. 9, 1996)). Likewise, the GAO correctly summarized *Fiore* as holding a power of attorney "bearing mechanically applied signatures as valid and binding where there is evidence demonstrating that the surety intends to be bound by such signatures." *Id.* (citing *Fiore*, 94–1 CPD ¶ 379, 1994 WL 313469, at *2–3, 1994 U.S. Comp. Gen. LEXIS 553, at *4).

After acknowledging that its prior decisions allow mechanical signatures, the GAO

in *All Seasons* imposed an additional requirement for their use: They must be affixed to the power of attorney after the power of attorney has been generated. *All Seasons,* 2002 CPD ¶ 212, 2002 WL 31761471, at *3, 2002 U.S. Comp. Gen. LEXIS 208, at *6.

A contracting officer reasonably may rely on GAO decisions in making a procurement determination:

> "[I]t is the usual policy, if not the obligation, of the procuring departments to accommodate themselves to positions formally taken by the [GAO] with respect to competitive bidding. That Office, as we have pointed out, has special concern with, and supervision over, that aspect of procurement. It would be entirely justifiable for the contracting officer to follow the general policy of acceding to the views of the Accounting Office in this area even though he had another position on the particular issue of legality or propriety."

*Honeywell, Inc.,* 870 F.2d at 648 (quoting *John Reiner & Co. v. United States,* 163 Ct.Cl. 381, 390, 325 F.2d 438, 442 (1963)).

The contracting officer determined whether plaintiff's bid bond documents established unequivocally the authority of the person signing the bid bond. In his original September 22, 2003 decision letters, the contracting officer faulted plaintiff's bids because the signatures were not original. No GAO cases hold that the signatures on a power of attorney must be original.[7] To the contrary, mechanical signatures repeatedly have been recognized as providing the required assurance and therefore allowed. *See All Seasons,* 2002 CPD ¶ 212, 2002 WL 31761471, 2002 U.S. Comp. Gen. LEXIS 208; *Daley Corp.,* 96–2 CPD ¶ 217, 1996 WL 705193, 1996 U.S. Comp. Gen. LEXIS 609; *Fiore,* 94–1 CPD ¶ 379, 1994 WL 313469, 1994 U.S. Comp. Gen. LEXIS 553; *Ray Ward,* 94–1 CPD ¶ 367, 1994 WL 273222, 1994 U.S. Comp. Gen. LEXIS 543. *All Seasons* expressly allows mechanical signatures. Thus, to the extent that the contracting officer relied on *All Seasons* as requiring original signatures,

the contracting officer lacked a reasonable basis to reject plaintiff's bids.

While it is true that the contracting officer's decision discussed *All Seasons* for the rule that mechanically applied signatures must be applied after the document is generated, the basis of this rejection was the lack of original signatures. Therefore, expanding on the contracting officer's rationale (to which plaintiff objects), the court next considers whether the decision to reject plaintiff's bids lacked a reasonable basis, *i.e.,* whether the rule put forward in *All Seasons* was reasonable. The contracting officer's subsequent explanatory letter of September 26, 2003, stated that plaintiff's bids were rejected because they contained mechanical signatures that were not applied after the powers of attorney were generated. For this proposition, the contracting officer did not rely on a "long line of cases," but rather on the new rule put forward by *All Seasons.*

Even though *All Seasons* expressed a rule allowing a mechanical signature applied to a document after its generation, as a practical matter the parties could not explain how that would appear any different than the document that plaintiff submitted. At oral argument counsel could not offer an example of how a contracting officer could ascertain that a mechanically produced signature was applied after the power of attorney was generated. Plaintiff's counsel suggested that an additional line of text certifying that the signature was mechanically applied after the document was generated might suffice.

Therefore, in examining the contracting officer's decision, the court focuses on the question as it appeared to the contracting officer when he opened the bids: Do the power of attorney documents establish unequivocally the authority of the person who signed the bid bonds? *See Daley Corp.,* 96–2 CPD ¶ 217, 1996 WL 705193, at *3, 1996 U.S. Comp. Gen. LEXIS 609, at *5. Specifically, the query is whether the surety has agreed to be bound.

---

7. Additionally, both the FAR and the SF 24 state, albeit indirectly as "sign" and "execute," that the SF 24 must contain an original signature. Those same words are not used to describe what is required on an accompanying power of attorney. If an original signature were to be required on the power of attorney, similar language in either the instructions or the regulations should inform the bidder of such a requirement. FAR § 52.228–1; FAC § 5252.228–9302.

### 3) *Plaintiff's powers of attorney documents*

■ Upon examining plaintiff's powers of attorney documents, it is apparent from the distinctive blue ink that they are not photocopies. The top of each document contains the power of attorney appointing Mr. Adair, the person who signed the bid bond, to execute bonds on behalf of American Home. It is mechanically signed by Mr. Mallonee, as Vice President, and contains a facsimile corporate seal. On its face it provides a valid appointment of Mr. Adair to do the very thing the contracting officer is concerned about, *i.e.,* to sign a bid bond.

The next section on the document is the notary attestation certifying that Mr. Mallonee did in fact sign the document and that he is the officer he claims to be. This notary certificate, also signed by facsimile signature, provides an additional assurance that the power of attorney is valid.

The third section of the document is a certificate excerpting board of directors' resolutions. It certifies that the vice president is authorized to appoint attorneys-in-fact, who, in turn, are authorized to execute bonds. It further certifies that the powers of attorney and board resolutions are still in effect and it is mechanically signed by Ms. Tuck, as secretary, who is authorized expressly to deliver a certification to that effect. Most significantly, the certificate states that the power of attorney and any related certificate may be signed by facsimile signature and that American Home will be bound by such a document.

In addition, over Ms. Tuck's facsimile signature was embossed the raised corporate seal of American Home. While a corporate seal does not on its own validate an improperly signed document, it is confirmatory in these circumstances that the surety is binding itself to the bond signed by Mr. Adair.

Unlike the document in *All Seasons,* plaintiff submitted powers of attorney with certificates restating board resolutions by which the surety bound itself to facsimile signatures on a power of attorney or any certificate relating to the power of attorney. This affirmation, combined with a facially valid appointment and original corporate seal, in their totality establish unequivocally that the surety intends to be bound.

Defendant and intervenors have argued that a mechanically applied signature does not give adequate assurance that the document has not been modified. *All Seasons* explained this rationale, as follows:

> While we have recognized a power of attorney bearing mechanically applied signatures as valid and binding where there is evidence demonstrating that the surety intends to be bound by such signatures, [*see Fiore,* B–256429, 94–1 CPD ¶ 379, 1994 WL 313469, at \*2–3, 1994 U.S. Comp. Gen. LEXIS 553, at \*4], we conclude that, for a mechanically applied signature to be recognized as valid and binding, it must be affixed to the power of attorney after the power of attorney has been generated. Where, as here, signatures are generated as part of a document, as opposed to being affixed to the document after its generation, they do not constitute an affirmation as to the correctness of its contents and thus do not serve to validate the document. In the absence of a validating signature, there is no way to be certain at the time of bid opening that the file from which a computer printer-generated power of attorney/certification was created has not been altered, just as there is no way to be certain that the original from which a faxed or photocopied power of attorney/certification was created has not been altered.

2002 CPD ¶ 212, 2002 WL 31761471, at \*3, 2002 U.S. Comp. Gen. LEXIS 309, at \*6.

However, in this regard a mechanical signature is not unique in any way compared with an original wet signature. The risk of fraud or forgery is inherent in any executed document. Since 1994 the GAO has recognized that mechanically applied signatures can give the requisite unequivocal assurance. In the present case, the surety went so far as to state unequivocally that facsimile signatures on both the powers of attorney and certificates are valid and that, per the certificates, it agrees to be bound by them. This may even be greater assurance that the surety intends to stand behind the document than

would be present if an original wet signature were present without a statement that the surety intends to be bound by any wet signature.[8]

Plaintiff points out that an original signature would not be required on the bid itself if a bidder provided certificates similar to ones submitted by plaintiff. FAR § 14.405(c)(2), captioned "Minor informalities or irregularities in bids," allows a contracting officer to accept an unsigned bid when:

The firm submitting a bid has formally adopted or authorized, before the date set for opening of bids, the execution of documents by typewritten, printed, or stamped signature and submits evidence of such authorization and the bid carries such a signature.

Thus, the FAR itself contemplates that non-original signatures are acceptable on bids. This practice is in conformity with FAR § 4.502(a), which announces that, as a matter of policy: "The Federal Government shall use electronic commerce whenever practicable or cost-effective. The use of terms commonly associated with paper transactions ... shall not be interpreted to restrict the use of electronic commerce." It would be a peculiar result if a bidder that submits a certificate informing the contracting officer that the surety formally has agreed to be held responsible for facsimile signatures should be allowed to submit a bid with a more informal signature than is required on the power of attorney documents associated with its bid bonds. If a reason exists, neither the contracting officer nor defendant and defendant-intervenors provided one.

Although the contracting officer's decision to reject plaintiff's bids was unreasonable, it is not unreasonable because he relied on GAO precedent. As discussed, contracting officers often rely on GAO decisions for guidance. However, in this case the contracting officer had to determine whether plaintiff's powers of attorney documents were sufficient to bind the surety. It is unreasonable for a contracting officer to rely on unreasonable rationale when making such a decision.

As applied by the contracting officer, *All Seasons* would prevent all uses of facsimile signatures because the contracting officer would not be able to tell if the signature had been mechanically applied after the document was generated. Mechanical signatures require additional indicia that the surety intends to be bound. By including a statement that the surety intends to be bound by all facsimile signatures, the surety has made it unequivocally clear that it intends to be bound by mechanically applied signatures.

In a bid protest the Government does not have the burden of proof to show that the contracting officer acted reasonably in rejecting a bid. The burden is entirely plaintiff's. However, when a contracting officer rejects a bid and the stated rationale for the rejection is unreasonable, the contracting officer's decision will not stand. The contracting officer should not be forced, when making a procurement decision, to accept a power of attorney when some ambiguity exists about the authority of the person signing the bond on behalf of the surety. *See Daley Corp.*, 96–2 CPD ¶ 217, 1996 WL 705193, at *3, 1996 U.S. Comp. Gen. LEXIS 609, at *5. Absent any reasonable doubt about the validity of a power of attorney executed by facsimile signature, however, the contracting officer cannot reject a bid on this basis. This is not to say that a contracting officer lacks discretion in reviewing bids for responsiveness. Nonetheless, if a bid conforms to all the technical and legal requirements, then it should not be held nonresponsive.

The contracting officer cannot reject a bid when the surety has bound itself as a matter of law to the obligations of the bond. In this case all bidders for both the Alpha and Bravo contracts, other than plaintiff, submitted original signatures on their powers of attorney. These original signatures may provide a greater assurance than the mechanically applied (facsimile) signatures on plaintiff's powers of attorney. Counsel for Nova stated at oral argument, "[i]t is, I believe, untenable

8. Defendant states that the addition of an original corporate seal after a document has been executed constitutes an alteration. Def.'s Resp.

to Pl.'s Prop. Findings of Facts ¶ 24, filed Dec. 30, 2003.

to suggest that [plaintiff] didn't know that there would be a problem if [the power of attorney] was concurrently generated." Transcript of Proceedings, *Hawaiian Dredging Constr. Co., Inc. v. United States*, No. 03–2763C at —— (Fed.Cl. Jan.6, 2004). Although the power of attorney submitted by Nova authorized the use of facsimile signatures, it did not contain a resolution committing the surety to be bound by facsimile signatures. Consequently, it is not surprising that Nova instructed the surety to use original signatures because a facsimile signature alone would not have provided the required assurance that the surety was unequivocally bound.

Once plaintiff has met the requirements of the IFBs concerning bid bonds, here unequivocally, the contracting officer does not have discretion to reject plaintiff's bids because other bids provided arguably greater assurance. The discretion to reject a bid for nonresponsiveness ends once it satisfies the requirements of an IFB.

### 4. *Other criteria for injunctive relief*

To obtain permanent injunctive relief, plaintiff must also show: (1) that it will be immediately and irreparably injured; (2) that the public interest would be better served by the relief requested; and (3) that the balance of hardships on all the parties favors the protestor. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (standard for permanent injunction is essentially same for preliminary injunction, except actual success replaces need to show likelihood of success on merits).

An action at law only allows recovery of "bid preparation costs in a suit for damages, but not loss of anticipated profits," leaving a bid protestor irreparably harmed. *Essex Electro Eng'rs, Inc. v. United States*, 3 Cl.Ct. 277, 287 (1983); *see also Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 575 n. 5, 492 F.2d 1200, 1204 n. 5 (1974) (acknowledging existence of damages remedy sometimes reason for denial of injunctive relief in federal district court); *M. Steinthal & Co., Inc. v. Seamans*, 455 F.2d 1289, 1302 (D.C.Cir.1971)

(holding that availability of damages, which do not include lost profits, does not warrant automatic dismissal of injunction regardless of strength of claim on merits).

Typically an injunction serves to protect the status quo while the court resolves a plaintiff's underlying claim. A bid protest, in contrast, is an injunctive action to prevent a competitor from securing the fruits of a government contract. The preliminary relief is the same as the ultimate relief.

If lost profits do not constitute irreparable harm, then a protester that seeks to displace a putative awardee automatically fails to meet one of the requirements for injunctive relief. The usual rule is that mere loss of money does not qualify as irreparable harm if the party can be made whole through money damages when the claim is resolved on the merits. In those bid protests seeking an award of a contract to any entity other than plaintiff—not resolicitation or cancellation or another form of relief—a protester is limited to recovery of bid preparation costs if it fails to obtain injunctive relief. *See E.W. Bliss Co. v. U.S.*, 77 F.3d 445, 447 (Fed.Cir. 1996) (holding unsuccessful bidder may be awarded bid preparation costs when Government violated its implied contract to fairly and honestly consider bids); *see also Keco Indus., Inc.*, 203 Ct.Cl. at 577–78, 492 F.2d at 1206. Loss of anticipated profits thus can be remedied solely by injunctive relief. The protester's interests cannot be met with a suitable monetary award in these circumstances unless a permanent injunction is granted.

The public interest is served by ensuring a procurement process conforms to applicable procurement regulations. *See Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1152 (Fed.Cir.1994); *Essex Electro*, 3 Cl.Ct. at 288. The combined contract savings to the Government of $1,732,287.00 if both contracts are awarded to plaintiff also should be taken into account. *See id.*

Finally, in comparing the hardships of an injunction, the Government, Triton, and Nova are not harmed by aborting a flawed award process. Conceivably, displacing Triton and Nova might cause them harm (beyond what

the Government can remedy by compensation for a termination for convenience). At oral argument Nova attempted to argue that it would suffer undue harm if an injunction were to issue because it already had mobilized in Hawaii to perform its contract. The factual predicate for this argument does not appear in the record because the parties have not submitted any affidavits or declarations that would show what has transpired. Throughout the scheduling and briefing of this case, no party raised the exigencies of time or harm as reasons to deny injunctive relief. Most telling of all, defendant did not join in making the argument that undue harm would befall itself or either intervenor if an injunction were ordered.

To the contrary, plaintiff submitted a November 26, 2003 letter to Mr. Louis memorializing an agreement by the Navy to stay performance of both the Alpha and Bravo contracts while plaintiff challenged the bids in the Court of Federal Claims. In exchange for staying performance, plaintiff agreed not to seek a temporary restraining order, and plaintiff and the Government avoided the time and expense of such a procedure.

Taking the proofs on all factors into consideration, plaintiff has established its entitlement to injunctive relief.

Prior to awarding a contract, the contracting officer must find that the bidder is responsible to perform. FAR § 9.105–1 states that "[i]nformation on financial resources and performance capability shall be obtained or updated on as current a basis as is feasible up to the date of award." The Navy will be given sufficient time to determine the responsiveness of plaintiff's bids and plaintiff's responsibility before awarding the contracts.

### CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment is granted, and defendant's and intervenors' cross-motions are denied. Accordingly,

**IT IS ORDERED**, as follows:

1. Defendant, by and through the U.S. Navy, its officers, agents, and employees, is enjoined from proceeding with performance of the contracts on IFBs N6742–02–B–1408 and N62742–03–B–1309 with any entity other than Hawaiian Dredging Construction Co., Inc., pending further order of the court.

2. By January 29, 2004, defendant shall file a Status Report stating the status of or result of any determination of the responsiveness and responsibility of plaintiff and advise whether modification of the permanent injunction to be entered is required should plaintiff's bids have been found nonresponsive, or should plaintiff have been found not to be responsible or otherwise not qualified to perform either of the contracts.

3. Counsel for defendant shall communicate by no later than 6:00 p.m. on January 9, 2004, the contents of this order to the contracting officials of the U.S. Navy and shall deliver to them a copy of this opinion and order as soon as practicable.

4. A copy of this opinion has been transmitted to counsel this date by facsimile transmission.