# Admissibility in Federal Court of Electronic Copies of Personnel Records

Federal official personnel and civil service retirement records that have been converted from paper to electronic format should be admissible in evidence in federal court under the Business Records Act, 28 U.S.C. § 1732, and should also qualify as "public records" admissible under Rule 1005 of the Federal Rules of Evidence.

Electronic versions of particular personnel records that, pursuant to statute or regulation, must be notarized, certified, signed, or witnessed may be authenticated under Rules 901 and 902 of the Federal Rules of Evidence. Converting such documents to electronic format should not affect their admissibility under hearsay rules.

May 30, 2008

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF PERSONNEL MANAGEMENT

The Office of Personnel Management ("OPM") intends to convert its personnel records, consisting of employees' "Official Personnel Folders" ("OPFs") and civil service retirement records (collectively, "Personnel Records"), from paper to electronic format. After verifying the accuracy of the electronic versions of the documents ("Electronic Personnel Records"), OPM intends to destroy the paper records. You have sought our opinion on whether the resulting Electronic Personnel Records will be admissible in federal court under the "best evidence" requirements of Article X (Rules 1001–1008) of the Federal Rules of Evidence ("Rules"). You also have asked us to analyze the admissibility of electronic versions of particular personnel records, which, pursuant to statute or regulation, must be notarized, certified, signed, or witnessed.[1]

The Business Records Act, 28 U.S.C. § 1732 (2000), resolves this issue. It provides, in relevant part, that a reproduction made "in the regular course of business" of a record made "in the regular course of business" by "any department

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Kerry B. McTigue, General Counsel, Office of Personnel Management at 1 (Apr. 19, 2007) ("McTigue Letter"). We sought, and received, the written views of the Merit Systems Protection Board, the Equal Employment Opportunity Commission, the Office of Special Counsel, and the Criminal Division. *See* Letter for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from B. Chad Bungard, General Counsel, Merit Systems Protection Board (July 2, 2007); Letter for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from Peggy R. Mastroianni, Associate Legal Counsel, Equal Employment Opportunity Commission (May 25, 2007); Letter for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from Scott J. Bloch, Special Counsel, Office of Special Counsel (May 25, 2007); Memorandum for Alice S. Fisher, Assistant Attorney General, Criminal Division, from Patty Merkamp Stemler and Claire J. Evans, Appellate Section, Criminal Division, *Re: Admissibility of Electronic Official Personnel Folders and Electronic Retirement Records* (undated draft). In addition, we received the informal views of the Civil Division. This opinion memorializes informal advice we provided you in August 2007.

or agency of government" is "as admissible in evidence as the original itself in any judicial or administrative proceeding whether the original is in existence or not." *Id*. The Business Records Act expressly permits the destruction of the paper originals in the regular course of business unless their preservation is required by law. *Id.* The Electronic Personnel Records that OPM intends to create also should qualify as "public records" admissible under Rule 1005. We also discuss the application of authenticity and hearsay standards to printouts of electronic records under the Federal Rules of Evidence. While we cannot conclude in advance of litigation that Electronic Personnel Records will be admissible in every case, OPM's plan to convert its paper files to electronic format should not appreciably increase the risk that a personnel record will be deemed inadmissible in a particular case.

## I.

The head of each "Federal agency" is required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency." 44 U.S.C. § 3101 (2000); *see also id.* § 2901(14) (defining "Federal agency"). In cooperation with the National Archives and Records Administration ("NARA") and the General Services Administration ("GSA"), the head of each agency is required to develop standards that will improve records management, ensure preservation of essential records, and "facilitate the segregation and disposal of records of temporary value." *Id.* § 3102; *see also id.* § 2904 (charging NARA and GSA with "provid[ing] guidance and assistance to Federal agencies" regarding records management and disposition). In addition, NARA has promulgated regulations setting forth "(1) procedures for the compiling and submitting . . . of lists and schedules of records proposed for disposal, (2) procedures for the disposal of records authorized for disposal, and (3) standards for the reproduction of records by photographic or microphotographic processes with a view to the disposal of the original records," 44 U.S.C. § 3302 (2000). *See generally* 36 C.F.R. pt. 1228 (2007–2008) (regarding the disposition of federal records).

In recent years, there has been increasing interest within the federal government in converting existing paper records to electronic format (and in permitting submission of required documents in electronic form), which promises to reduce storage costs while offering easier search and retrieval, thereby improving functionality and efficiency. *See* U.S. Dep't of Justice, *Legal Considerations in Designing and Implementing Electronic Processes: A Guide for Federal Agencies* at 2, 5 (Nov. 2000) ("*Legal Considerations*"), *available at* www.cybercrime.gov/process.pdf; *cf.* Mary Moreland & Steward Nazzaro, *Admitting Scanned Reproductions into Evidence*, 18 Rev. Litig. 261, 262, 270 (1999) ("*Admitting Scanned Reproductions*") (discussing trend in private sector). In 1998, Congress enacted the Government Paperwork Elimination Act, Pub. L. No. 105-277, tit. XVII, 112 Stat. 2681–2749,

*reprinted in* 44 U.S.C. § 3504 note (2000) ("GPEA"), which requires, among other things, that federal agencies provide "for the option of the electronic maintenance, submission, or disclosure of information, when practicable as a substitute for paper." GPEA § 1704(1). "Electronic records submitted or maintained in accordance with procedures developed under [the GPEA] shall not be denied legal effect, validity, or enforceability because such records are in electronic form." *Id.* § 1707. Although the GPEA does not appear directly relevant to the questions you posed,[2] it has spurred efforts to convert to electronic recordkeeping and reflects Congress's judgment that maintenance of records in electronic format is in the interests of the federal government and its employees. Similarly, the expansion of "electronic government" was one of the components of the President's Management Agenda announced during summer 2001. *See* Office of Management and Budget, *The President's Management Agenda*, Fiscal Year 2002, at 23–25 (available at http://www.whitehouse.gov/omb/budget/fy2002/mgmt.pdf, last visited ca. 2008). NARA has issued regulations and guidance on the conversion of paper records to electronic format and for the submission of electronic records to NARA for retention as permanent records. *See* 36 C.F.R. § 1228.31 (2008); *Expanding Acceptable Transfer Requirements: Transfer Instructions for Existing Permanent Electronic Records Scanned Images of Textual Records* (Dec. 23, 2002) (available at http://www.archives.gov/records-mgmt/initiatives/scanned-textual.html, last visited Aug. 13, 2014); General Records Schedule 20, Electronic Records, item 2 (Feb. 2008) (available at http://www.archives.gov/records-mgmt/ardor/grs20.html, last visited ca. 2008).

As one initiative designed to support the President's Management Agenda, *see* Office of Personnel Management, *E-Gov, Enterprise Human Resources Integration: Overview* (available at http://fehb.opm.gov/egov/e-gov/EHRI/overview/, last visited Aug. 13, 2014). OPM has announced plans to convert Official Personnel Records and civil service retirement records to electronic format. Under this

---

[2] Section 1707 of the GPEA addresses only the "legal effect, validity, or enforceability" of electronic records, that is, whether they have the legal effect of paper documents in effectuating a transaction and enforcing legal obligations. While the prohibition on "den[ying] legal effect" to appropriately maintained electronic records suggests that they may serve as evidence in court, section 1707 does not suggest that electronic records are admissible notwithstanding the "best evidence" requirements of Article X or the authenticity requirements of Article IX. *Cf.* 144 Cong. Rec. 27,170, 27,171 (Oct. 20, 1998) (joint statement of intent by Senators Abraham, Wyden, and McCain) (stating that predecessor of section 1707 "is intended to preclude agencies or courts from systematically treating electronic documents and signatures less favorably than their paper counterparts"). What guidance exists on the GPEA does not suggest that section 1707 affects admissibility under the Federal Rules of Evidence. *See Legal Considerations*; Office of Management and Budget, *Notices: Procedures and Guidance; Implementation of the Government Paperwork Elimination Act*, 65 Fed. Reg. 25,508 (May 2, 2000). No published court decisions have addressed the effect of the GPEA, and scholarly commentary does not discuss whether the GPEA affects admissibility. Given the clear authority supporting admissibility of electronic agency records discussed in the text, and the absence of relevant case law construing section 1707, it is not necessary or advisable for us definitively to resolve whether the GPEA provides additional authority supporting admissibility. In any event, it is not clear that OPM maintains Electronic Personnel Records "in accordance with procedures developed under" the GPEA.

initiative, OPM proposes to scan paper records into digital electronic format. It will retain the paper originals for one year, during which time OPM will verify that the electronic versions are accurate reproductions. After one year, OPM will destroy the paper originals. McTigue Letter at 1. This program is expected to increase employee access to their records, improve security from destruction or loss, and increase efficiency and responsiveness.

The OPF is a file containing records reflecting a federal employee's appointment, employment history, and benefits information. Office of Personnel Management, *Operating Manual: The Guide to Personnel Recordkeeping* at 1-7 (2006) (available at http://archive.opm.gov/feddata/recguide2006.pdf, last visited Aug. 13, 2014). *See generally* 5 C.F.R. § 293.304 (2007) (specifying contents of folder). Federal regulations require each agency to establish an OPF for most employees. *See id.* § 293.302. An OPF typically includes such records as the Appointment Affidavit, Declaration for Federal Employment, forms verifying military service, performance assessments, federal benefits forms, and Thrift Savings Plan forms. *See* Personnel Documentation: Frequently Asked Questions, (available at http://www.opm.gov/feddata/html/pd-faqs.asp, last visited ca. 2008); *Guide to Personnel Recordkeeping* at 3-2 to 3-40. The civil service retirement records that OPM plans to convert to electronic format consist of various forms related to retirement from federal service and retirement-related benefits,[3] as well as various court orders, correspondence, and miscellaneous notes.

Executive Order 12107, as amended, grants OPM authority to regulate the management of OPFs. It provides, in relevant part, that "the authority of the President, pursuant to the Civil Service Act of January 16, 1883, to designate official personnel folders in government agencies as records of the Office of Personnel Management and to prescribe regulations relating to the establishment, maintenance and transfer of official personnel folders, is delegated to the Director of the Office of Personnel Management." *Id.*, *reprinted in* 5 U.S.C. § 1101 note (2007).[4] OPM regulations specify that "[t]he OPF of each employee in a position

---

[3] These forms may include, for example, the Individual Retirement Record (SF2806), Request for Recovery of Debt Due the United States (SF2805), Request for Offset for Health Benefits Premiums from Monies Payable Under the Civil Service Retirement System or the Federal Employees Retirement System (OPM1522), Application for Refund of Retirement Deductions (SF2802/SF3106), Application to Make Deposit or Redeposit (SF2803), Report of Separation from Active Duty (DD214), Military Deposit Worksheet (OPM1514), Application to Make Voluntary Contributions (SF2804), Application for Return of Excess Retirement (OPM1562), Health Benefits Registration Form (SF2809), Election of Coverage (SF3109), Assignment of Federal Employee's Group Life Insurance (RI76-10), Designation of Beneficiary, CSRS (SF2808/SF3102), and Designation of Beneficiary, Federal Employee's Group Life Insurance Program (SF2823) (available at http://www.opm.gov/forms, http://www.archives.gov/veterans/military-service-records, last visited ca. 2008).

[4] *See generally* Civil Service Act of Jan. 16, 1883, ch. 27, 22 Stat. 403, 404 (providing that the Civil Service Commission "shall, subject to the rules that may be made by the President, make regulations for, and have control of, such examinations and, through its members or the examiners, it shall supervise and preserve the records of the same"); 5 U.S.C. § 1301 (2000) ("The Office of Personnel

subject to civil service rules and regulations is under the jurisdiction and control of, and is part of the records of, the Office of Personnel Management." 5 C.F.R. § 293.303 (2007); *see also id.* § 293.304 ("The folder shall contain long-term records affecting the employee's status and service as required by OPM's instructions . . . .").

## II.

You have asked us, first, to address whether electronic Official Personnel Folders and electronic retirement records will be admissible under the "best evidence" provisions of Article X of the Federal Rules of Evidence in litigation where those records are at issue. McTigue Letter at 1. Before turning to the Rules of Evidence, however, we will address the Business Records Act, 28 U.S.C. § 1732, which provides that Electronic Personnel Records are admissible to the same extent as paper Personnel Records (*see* Part II.A, *infra*). We conclude that this statute provides for the admissibility of the electronic records in question. Even if the Business Records Act were inapplicable, such Electronic Personnel Records (or certified paper printouts of them) should generally be admissible as "public records" under Rule 1005 (*see* Part II.B, *infra*). Although an electronic record might also meet the conditions for admissibility as a "duplicate" under Rule 1003 or as "other evidence" under Rule 1004, it is unlikely it would be admitted under those Rules because of the preclusive effect of Rule 1005 (*see* Part II.C, *infra*).

## A.

The Business Records Act provides:

> If any business, institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence, or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law. *Such reproduction, when satisfactorily identified,*

---

Management shall aid the President, as he may request, in preparing the rules he prescribes under this title for the administration of the competitive service."); *id.* § 1302; *id.* § 3301(1) ("The President may . . . prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service"); *id.* § 7301 ("The President may prescribe regulations for the conduct of employees in the executive branch.").

> *is as admissible in evidence as the original itself in any judicial or administrative proceeding whether the original is in existence or not . . . .*

28 U.S.C. § 1732 (emphasis added).

Section 1732 "gives [electronic] scanned copies the same status as originals" if three conditions are met. 2 Kenneth S. Broun et al., *McCormick on Evidence* § 236, at 98 n.10 (6th ed. 2006) ("McCormick").[5] There is little question that the Electronic Personnel Records will satisfy each of those conditions. First, the documents will consist of "writing[s]" that a "department or agency of government[] in the regular course of business or activity has kept or recorded." Second, the agency will cause those writings to be scanned and converted to electronic format "in the regular course of business."[6] OPM may wish to issue regulations prescribing the procedure for creating these records to avoid any question about whether the electronic conversion is performed "in the regular course of business." Third, we believe it evident that the Electronic Personnel Records will be "satisfactorily identified." Although there is little case law addressing what it means for a record to be "satisfactorily identified" for purposes of section 1732, this condition should be met by a showing that the reproduction was made and kept in the ordinary course of business.[7]

---

[5] *Accord* R. David Whitaker, *Admission into Evidence of Paper Records Converted to Electronic Form*, 60 Consumer Fin. L.Q. Rep. 325, 327 (2006) ("*Paper Records Converted*") ("The Business Records Act permits business records scanned into electronic form to serve as originals, so long as the electronic record can be satisfactorily identified, the image is accurate, and its storage is durable."); *Admitting Scanned Reproductions*, 18 Rev. Litig. at 266 ("As long as the company designs its program to meet the prerequisites of Section 1732, a scanning procedure should qualify as an 'other process which accurately reproduces or forms a durable medium.'"); *see also* 5 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 1002.02[2], at 1002-5 (9th ed. 2006) ("Saltzburg") (suggesting that "photographic reproductions" can be treated as originals under section 1732); 6 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 1001.11[3], at 1001-51 & n.5 (2d ed. 2007) ("Weinstein") ("computer evidence is admissible if produced in the ordinary course of business, even if the underlying documents are routinely destroyed for business reasons") (citing section 1732).

[6] *See, e.g.*, *United States v. Fendley*, 522 F.2d 181, 187 (5th Cir. 1975) (computer printout of financial records admissible under section 1732); *United States v. Teague*, 445 F.2d 114, 119 (7th Cir. 1971) (photocopies of documents, shown to have been kept in regular course of business, admissible under section 1732(b)); *Williams v. United States*, 404 F.2d 1372, 1373 (5th Cir. 1968) (per curiam) (microfilm copy of check and reproduction therefrom admissible under section 1732(b)); *Myrick v. United States*, 332 F.2d 279, 282 (5th Cir. 1963) (photostatic copy of check admissible under section 1732(b)).

[7] *See United States v. Kitzman*, 520 F.2d 1400, 1403 (8th Cir. 1975) (suggesting that "reproduction was not identified" where "[t]here was no showing that the title certificate was kept, recorded or copied in the regular course of business"); *Williams*, 404 F.2d at 1373 ("The reproductions [of records] were satisfactorily identified by bank officials and employees, as required by the Business Records Act" where "[i]t was shown that each microfilm was made in the regular course of the business of the bank . . . and that it was the regular course of that bank's business to make and keep such a record."); *United States v. Miller*, 500 F.2d 751, 754–55 (5th Cir. 1974) (records properly admitted under section 1732 where "company employees testified that the government exhibits in question were copies of

For nearly twenty-five years before the adoption of the Federal Rules of Evidence, section 1732 (and analogous state provisions implementing the Uniform Photographic Copies of Business and Public Records as Evidence Act, *see McCormick's Handbook on the Law of Evidence* § 236, at 568 & nn. 68–69 (2d ed. 1972)) figured prominently in the admissibility of reproductions of records. But section 1732 has been cited only rarely since adoption of the Federal Rules; courts typically analyze the question of admissibility only under Rules 1001–1005.[8] Section 1732 may be overlooked because of the preeminence of the Federal Rules of Evidence, or perhaps because courts believe it has been superseded by the Rules. Congress plainly intended, however, that section 1732 would have continuing applicability after adoption of the Federal Rules. At the time Congress enacted the Rules, it amended section 1732 to delete a statutory hearsay exception then set forth in subsection (a) of that provision because it was largely redundant with new Rule 803(6). *See* Pub. L. No. 93-595, § 2(b), 88 Stat. 1949 (1975); *see also* S. Rep. No. 93-1277, at 24 (1974). Congress retained the former subsection (b), which now constitutes the entirety of section 1732. Congress's decision to preserve the current provision at the time it transferred the substance of section 1732(a) to the new Rule 803(6) is a compelling indication that it intended the provision to have continuing effect after adoption of the Rules. Scholarly commentary confirms that section 1732 remains in force.[9]

---

customer bills and company records, were kept in the ordinary course of business, and were made at or near the time of the transactions reflected on them," and emphasizing that "[t]he person who actually keeps the books and records and makes the entries need not testify if a person does testify who is in a position to attest to the authenticity of the records"); *see also United States v. Carroll*, 860 F.2d 500, 507 (1st Cir. 1988) (concluding that standards established under *Williams* and section 1732 are proper under Federal Rule of Evidence 1003, such that "when a print of a microfilm copy of bank checks, kept by the bank in the regular course of business, is properly identified by a custodian of records as a complete and accurate reproduction thereof," it is admissible as a "duplicate"); *Turk v. Florida*, 403 So. 2d 1077, 1078–79 (Fla. App. 1981) (in applying analogous state provision, holding that "testimony by the custodian of the document as to how it came to be, who it came from, who reproduced it," among other information, might "satisfactorily identif[y]" document); *Admitting Scanned Reproductions*, 18 Rev. Litig. at 265 (condition met where record is "satisfactorily identified *as a duplicate*") (emphasis added).

[8] We have found only four references to section 1732 in federal court decisions since the adoption of the Federal Rules of Evidence; in two of those decisions, the courts also discussed Rules 1001–1005 and appeared to consider the statute and the Rules to be coextensive. *See United States v. Carroll*, 860 F.2d 500, 506–08 (1st Cir. 1988) (holding microfilm copies of checks admissible under section 1732 and Rules 1003 and 1004 to prove contents of missing originals); *United States v. Kitzman*, 520 F.2d 1400, 1402 (8th Cir. 1975); *All Seasons Constr., Inc. v. United States*, 55 Fed. Cl. 175, 181 (2003) (noting section 1732 in passing); *Amoco Prod. Co. v. United States*, 455 F. Supp. 46 (D. Utah 1977) (holding photocopy of conformed copy of quitclaim deed inadmissible under section 1732 and Rule 1003 to prove contents of missing original deed), *rev'd*, 619 F.2d 1383, 1391 (10th Cir. 1980) (remanding for consideration whether photocopy might be admissible for other purposes under Rule 1003; not mentioning section 1732).

[9] *See* 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 7185, at 396 & n.7 (2000) ("Wright & Gold"); *id.* § 7166, at 332–34; 6 Weinstein § 1001.11[3], at 1001-51 & n.5; *id.* § 1002.04[5][a], at 1002-12 to -13 & n.51; 2 McCormick § 236, at 98 n.10; *Paper Records*

Section 1732 provides that the reproduction kept by the government is as admissible in evidence as the original itself "in any judicial or administrative proceeding." It thus applies to administrative hearings where the Federal Rules do not apply. *See* Fed. R. Evid. 1101(d), (e). Moreover, it authorizes "any department or agency of government" to destroy an original after duplicating it, so long as reproductions are made "in the regular course of business" and preservation of the original document is not "required by law." It thus furnishes additional statutory authority for OPM to undertake this document conversion program.[10]

### B.

Even if the Business Records Act were deemed inapplicable, Electronic Personnel Records should be admissible under Rule 1005 of the Federal Rules of Evidence. That rule, entitled "Public Records," provides:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original.

Fed. R. Evid. 1005. Rule 1005 treats the record lawfully on file with the government as the official or public "record" for purposes of admissibility, rather than an earlier version that may have been copied or destroyed. It also permits the contents of that record to be proven by "copy," such that the government need not produce the official record in court.

---

*Converted*, 60 Consumer Fin. L.Q. Rep. at 327; *Admitting Scanned Reproductions*, 18 Rev. Litig. at 266; 5 Saltzburg § 1002.02[2], at 1002-5.

[10] Similarly, 44 U.S.C. § 3312 (2000), provides that "[p]hotographs or microphotographs of records made in compliance with regulations under section 3302 of this title shall have the same effect as the originals and shall be treated as originals for the purpose of their admissibility in evidence." As noted above, NARA has issued regulations and guidance under section 3302 concerning the conversion of paper records to electronic format through digital imaging technology. If OPM complies with NARA's regulations in its creation of Electronic Personnel Records, those records should qualify for treatment as "originals for the purpose of their admissibility in evidence" under section 3312.

Section 1733(b) of title 28 likewise provides that "[p]roperly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof." That provision, however, "does not apply to cases, actions, and proceedings to which the Federal Rules of Evidence apply." 28 U.S.C. § 1733(c) (2000). Although section 1733(b) may still apply to administrative, arbitral, and state court proceedings where the Federal Rules of Evidence do not, we have found no reported case indicating that the statute has been applied since the enactment of the Federal Rules of Evidence. As with section 1732, the provision's disuse most likely reflects the availability of alternative mechanisms for admissibility under other applicable rules, including analogues to Federal Rule of Evidence 1005, discussed below.

Personnel Records should qualify as "official record[s]" or as "document[s] authorized to be recorded or filed and actually recorded or filed" under Rule 1005. The Rule has been construed to apply to any "writing . . . held in a public office that was either created by a public official or, regardless of public or private authorship, was authorized by law to be recorded or filed in that office and was in fact recorded or filed there." 31 Wright & Gold § 8033, at 506. A host of official documents have been held to be "public records" under similar rules, including judicial records, weather records, geology records, census records, marriage records, and selective service records. *See* 6 Weinstein § 1005.03[2], at 1005-7 to 1005-8 & nn. 7–13. The Personnel Records consist of documents lawfully filed with agencies and created by government employees, former government employees, and private citizens with an interest in federal employees' benefits, all of which fall squarely within the scope of Rule 1005.

It follows that Electronic Personnel Records, which OPM plans to keep and use for official purposes, should likewise qualify as "official records" or as "document[s] authorized to be recorded or filed and actually recorded or filed" under Rule 1005. This interpretation is bolstered by the Rule's inclusion of "data compilations *in any form*," Fed. R. Evid. 1005 (emphasis added), and by treatises and case law concluding that the copy of a document filed in a records office, not the original retained by a private citizen, is the "public record" for purposes of Rule 1005.[11] Because the content of these official electronic records may be proven by a "copy," it follows that a certified paper printout of the electronic personnel record will be admissible under Rule 1005.[12]

---

[11] *See* 6 Weinstein § 1005.06[1], at 1005-12; 29A Am. Jur. 2d Evidence § 1091 ("While the language of Rule 1005 encompasses deeds, mortgages, and other documents filed in a county recorder's office, it is the actual record maintained by the public office which is the object of the Rule, not the original deed from which the record is made; if the original deed is returned to the parties after it is recorded, it is not a public record as contemplated by Rule 1005.") (footnotes omitted); *Amoco Prod. Co. v United States*, 619 F.2d 1383, 1390 (10th Cir. 1980) (same); *cf. State v. Blackmon*, No. 85 C.A. 70, 1987 WL 7423, at *4 (Ohio App. Mar. 5) (holding that while "a microfilm copy of the formal journal entry . . . was not the original of appellant's plea of guilty to armed robbery," "the journal entry is properly certified by the Clerk of Courts and described by the witness . . . as part of the record regularly kept by that office in the manner prescribed by law"; "[t]he record can be properly admitted under Ohio Evid. Rule 803(8), public records and reports").

[12] Although Article X does not define the term "copy," it defines "duplicate" as a "counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, . . . or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Fed. R. Evid. 1001(4). That definition appears broad enough to include a paper printout of an electronic document. *Cf.* Fed. R. Evid. 1001(3) ("If data are stored in a computer . . . , any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'"). In the absence of a similarly limited definition, the term "copy" should be construed in accordance with its plain meaning, *cf. Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning . . . ."), as a "reproduction of an original work." *Webster's Third New International Dictionary* 504 (1993). Thus, "it makes sense to conclude that 'copy' is a broader term" than "duplicate," 31 Wright &

Even if the destroyed paper personnel record were deemed to be the "official record" for purposes of Rule 1005, a printout of "a digital copy" maintained by an agency should be admissible as a second-generation copy (i.e., a copy of a copy), because "if each generation of a copy is prepared by a public office using a reliable reproduction method, certified copies should be sufficiently reliable to be admitted under Rule 1005." 31 Wright & Gold § 8033, at 506–07; *see also id.* at 506 ("The courts assume that a 'duplicate' under Rule 1003 can be a copy of a copy."); 2 McCormick § 236, at 100 & n.13 ("a duplicate of a duplicate may be found admissible") (collecting authorities). The process of converting paper originals to digital format, if conducted conscientiously according to regular procedures, should be sufficiently reliable that resulting electronic versions of documents would be admissible under Rule 1005 as a copy. "[I]f data is scanned into a computer or copied to the computer by some other device, the resulting stored data or printout probably is a duplicate of the source material," even for purposes of the more exacting standard of Rule 1003. 31 Wright & Gold § 7167, at 20 (Supp. 2007).[13] Similarly, courts routinely accept as "duplicates" under Rule 1003 records that have been converted from paper originals into other formats (such as microfilm or photographs) through comparable processes.[14] *See generally* 2 McCormick § 236, at 98 ("any form of copying which generally produces an accurate duplicate of an original should be viewed as sufficient to fulfill this policy [of requiring original documents]"). A properly certified printout of an electronic record that is itself a copy should therefore also be admissible under Rule 1005 as a "copy." 31 Wright & Gold § 8033, at 506 (a printout of a "digital 'copy' . . . in

---

Gold § 8033, at 506, and that a paper printout of an Electronic Personnel Record will be admissible to prove the content of that record.

[13] *Accord Paper Records Converted*, 60 Consumer Fin. L.Q. Rep. at 326 (suggesting that printouts of electronically scanned originals should be admissible under best evidence rule as duplicates); *Admitting Scanned Reproductions*, 18 Rev. Litig. at 281 ("[I]f the proper steps are taken, there is no reason why [an] imaged reproduction should not be just as admissible as an original."); James E. Carbine & Lynn McLain, *Proposed Model Rules Governing the Admissibility of Computer-Generated Evidence*, 15 Santa Clara Computer & High Tech. L.J. 1, 24 (Jan. 1999) ("*Computer-Generated Evidence*") (concluding that, under present law, "[e]lectronically imaged documents would be 'duplicates,' and . . . [s]uch electronically imaged 'duplicates,' if they are of public records, are as equally admissible as the originals"); *cf. United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005) (holding that trial court did not err in admitting audio recording although government did not preserve the original digital recording but instead downloaded the data to disk and offered a duplicate recording at trial).

[14] *See United States v. Mulinelli-Navas*, 111 F.3d 983, 989–90 (1st Cir. 1997) (microform copy of check admissible because defendant failed to offer testimony that original had been tampered with or altered in any way so that copy was not what it purported to be); *FDIC v. Wheat*, 970 F.2d 124, 131–32 (5th Cir. 1992) (upholding admission of copies of loan records made from microfilms of originals); *United States v. Carroll*, 860 F.2d 500, 506–08 (1st Cir. 1988) (construing Rules 1003 and 1004 to support admissibility of microfilms of checks); *see also United States v. Stockton*, 968 F.2d 715, 719 (8th Cir. 1992) (photographs of seized documents were admissible as "duplicates" under Rule 1003).

the official records can be a 'copy' for purposes of Rule 1005 even though it is not made from the original").[15]

### C.

The Electronic Personnel Records that OPM intends to create likely would also be admissible as "duplicates" under Rule 1003,[16] or as "other evidence" under Rule 1004,[17] but for the fact that Rule 1005 appears to preempt Rules 1003 and 1004 with respect to the admissibility of public records. Although Article X generally rejects the notion that some forms of secondary evidence are to be preferred over others, *see generally* Fed. R. Evid. 1004, Rule 1005 "creates a clear preference for certified or compared copies over other forms of secondary evidence" of a public record. 6 Weinstein § 1005.04, at 1005-9. Because of concerns that Rule 1005's "blanket dispensation from producing or accounting for the original would open the door to the introduction of every kind of secondary evidence of contents of public records," Fed. R. Evid. 1005, 1972 advisory committee's note, the Rule provides that other types of secondary evidence of

---

[15] Under Rule 1005, an otherwise admissible copy may be proved in two ways: by certification in accordance with Rule 902, and by comparison with the original by a witness who attests to its faithful reproduction. Rule 902(4) permits authentication of "[a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification."

[16] "A duplicate is admissible to the same extent as an original," except when "a genuine question is raised as to the authenticity of the original" or when "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. A "duplicate" is "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, *or by mechanical or electronic re-recording*, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Fed. R. Evid. 1001(4) (emphasis added). Ordinarily, "[e]lectronically imaged documents," such as the Electronic Personnel Records, "would be 'duplicates'" of the paper original under Rule 1003. *Computer-Generated Evidence*, 15 Santa Clara Computer & High Tech. L.J. at 24.

[17] "[O]ther evidence of the contents of a writing . . . is admissible," if the originals have been lost or destroyed (other than in bad faith), are unobtainable, are in possession of an opponent (who does not produce them), or the documents are "not closely related to a controlling issue." Fed. R. Evid. 1004. Because Rule 1004 "recognizes no 'degrees' of secondary evidence," Fed. R. Evid. 1004, 1972 advisory committee's note, once one of those prerequisites is satisfied, "the party seeking to prove the contents of the [document] . . . may do so by any kind of secondary evidence," *United States v. Ross*, 33 F.3d 1507, 1513 (11th Cir. 1994), ranging from reproductions that may also qualify as "duplicates" under Rule 1003, *e.g.*, *United States v. Gerhart*, 538 F.2d 807, 810 n.4 (8th Cir. 1976), to the testimony of a witness about his recollection of the contents of a document, *e.g.*, *Neville Constr. Co. v. Cook Paint & Varnish Co.*, 671 F.2d 1107, 1109 (8th Cir. 1982). *See generally* 2 McCormick § 238, at 109. "Other evidence" thus should include electronic reproductions like those OPM intends to create. It therefore seems likely that scanned electronic versions of paper records that were destroyed in good faith in the ordinary course of business ordinarily would be admissible as "other evidence" under Rule 1004(1). *Cf. Wright v. Farmers Co-op of Ark. & Okla.*, 681 F.2d 549, 553 (8th Cir. 1982) (photocopy of interview transcript admissible where employee who took statement testified that recording had been destroyed in regular course of business).

records' contents are admissible only if a properly certified copy of the official record is not available. *See generally id.* ("Recognition of degrees of secondary evidence in this situation is an appropriate *quid pro quo* for not applying the requirement of producing the original."). This clear preference for certified or compared copies has caused some courts and commentators to conclude that a party may seek to introduce an uncertified or uncompared "duplicate" of an official record under Rule 1003, or "other evidence" of the contents of such a document under Rule 1004, only if a certified copy of the record is not available. *See, e.g.*, *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1391 (10th Cir. 1980); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1227 (E.D. Pa. 1980) (Becker, J.), *rev'd on other grounds*, 475 U.S. 574 (1986); 6 Weinstein § 1005.06[1], at 1005-12; 31 Wright & Gold § 8033, at 498–99.

Rule 1005's preclusive effect likely would prevent reliance on Rule 1003 to introduce Electronic Personnel Records into evidence unless no certified or compared copy of the public record is available. Because providing the requisite certification for the electronic records at issue (or comparing the printout with the electronic record) should be straightforward, any difficulty in satisfying the requirements of Rule 1005 would likely be because a "copy" is unavailable, perhaps because the electronic record is lost or corrupted. Under such circumstances, it seems unlikely that an agency would be able to produce a reliable counterpart of the original paper record that would qualify as a "duplicate" under Rule 1003. Thus, Rules 1003 and 1004 are unlikely to bear on proving the contents of Electronic Personnel Records.

## III.

You also have asked us to "address specifically whether the electronic versions of the following categories of documents" would be admissible in federal courts, McTigue Letter at 1, once the paper versions are destroyed in accordance with OPM's plans:

> (1) documents required by OPM regulations to be notarized and/or certified, such as affidavits and court orders, as required in 5 C.F.R. § 831.2007–2008, 838.221(b), and 843.208–209;
>
> (2) designations of beneficiaries for life insurance (SF 2823), which require "signed and witnessed writing[s]" under 5 U.S.C. § 8705(a);
>
> (3) assignments of Federal employees' group life insurance (RI 76-10), which require signed and witnessed writing under 5 C.F.R. 870.902;

(4) designations of beneficiaries to receive lump sum CSRS benefits (SF 2808), which require "signed and witnessed writing[s]" under 5 U.S.C. § 8342(c); and

(5) designations of beneficiaries to receive lump sum [Federal Employees Retirement System] benefits (SF 3102), which also require "signed and witnessed writing[s]" under 5 U.S.C. § 8424(d).

*Id.* As discussed above, a printout of an Electronic Personnel Record should be admissible to prove the content of that document. The best evidence rules of Article X are not the only hurdles that a document must clear, however, to be admissible into evidence. *See United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir. 1993) ("[t]he proponent of a writing at trial must overcome authentication, best evidence, and hearsay objections"). Accordingly, we will also address authentication of electronic versions of these five categories of documents under Article IX (Rules 901–903), and admissibility under the hearsay rules of Article VIII (Rules 801–808).

## A.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901. So long as this "minimal" standard is met, "authenticity [is] established under Rule 901 and the court or trier of fact may consider conflicting evidence only for purposes of measuring probative value and weight." 31 Wright & Gold § 7103, at 24; *id.* § 7104, at 36 ("The judge should permit the evidence to go to the jury unless the showing as to authenticity is so weak that no reasonable juror could consider the evidence to be what its proponent claims it to be."); *see also United States v. Meienberg*, 263 F.3d 1177, 1181 (10th Cir. 2001) ("Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility.") (quoting *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988)). The best evidence requirements of Article X and the authentication requirements of Article IX overlap somewhat, but a paper printout of an electronic record will have to clear additional hurdles in order to be authenticated. We conclude that printouts of the electronic versions of these forms will likely be considered authentic and admissible.

The first step in authenticating a paper printout of an electronic record involves authenticating the electronic record itself. Because the electronic record is the official or public record maintained by OPM, it should qualify for authentication as a "[p]ublic record or report" under Rule 901(b)(7). "Public records or reports"

may be authenticated through "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." Fed. R. Evid. 901(b)(7). Each of the forms listed above is likely to be a "writing" within the scope of the authenticity rules. A variety of forms have been held to constitute "writings" for purposes of Rule 901(b)(7), including "not just items prepared by public officials but also items prepared by private parties where those items are authorized by law to be recorded or filed" in a public office. 31 Wright & Gold § 7112, at 122–23 & nn. 7–18; *id.* at 126; *see also* Fed. R. Evid. 1001 (defining "writings").

Authentication of such documents is typically straightforward. Proof that a document was recorded or filed in a public office can be inferred from testimony that the document was found in the official public records, 31 Wright & Gold § 7112, at 125–26, so that the proponent of public documents ordinarily "may prove their authenticity by proving that the appropriate public office has custody of them, without further proof," at least when the document is among the official records. 5 Weinstein § 901.10[1], at 901–88; *id.* § 901.10[1], at 901–89 (proof that copy of document was kept in a government agency's working files, rather than its official files, was insufficient to authenticate it); *see also* Fed. R. Evid. 901(b)(7), 1972 advisory committee's note ("Public records are regularly authenticated by proof of custody, without more."). "This result is founded on the assumption that the public employees having custody of such records will carry out their public duty to receive and maintain only genuine official [documents]." 2 McCormick § 226, at 70–71 ("If a writing is claimed to be an official report or record of a public governmental agency, and is also proved to have come from the proper public office where such official papers are kept, it is generally agreed that this authenticates the offered document as genuine."); *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (noting presumption that public records are authentic and trustworthy with the burden on the opponent to present "enough negative factors to persuade a court that a report should not be admitted") (quoting *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir.1992)). The testimony of a document custodian can establish this fact. *See, e.g., United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985) (testimony of telephone company billing supervisor sufficient foundation for admission of computer-generated toll and billing records).

The second step is to authenticate the paper printout. Because of overlap between the Rules, that requirement likely would be satisfied by compliance with the requirements of Article X. For the printout to be introduced under Rule 1005 on the theory that it is a copy of a "public record," it will have to be "certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original." Fed. R. Evid. 1005. Rule 902 permits a copy of an official record or report to be authenticated when certified correct "by the custodian [of records] or other person authorized to make the certification," Fed. R. Evid.

902(4), which would again include an official who is familiar with an agency's electronic record-keeping system. Because of the inherent reliability of public documents, certified copies are self-authenticating documents whose "authenticity is taken as sufficiently established for purposes of admissibility without extrinsic evidence." Fed. R. Evid. 902, 1972 advisory committee's note. Their authenticity can also be proven by extrinsic evidence. *See* Fed. R. Evid. 901(b)(7); 31 Wright & Gold § 7112, at 129.

We do not anticipate that the statutory requirements of signing, witnesses, and notarization outlined above will present particular issues under the authentication rules for threshold admissibility purposes. There is no requirement that the proponent of a public record further authenticate it by, for example, proving that a specific electronic document is an authentic copy of the paper original or that its signatures and notary seals are authentic. *See United States v. Farah*, 475 F. App'x 1, 10–11 (4th Cir. 2007) (testimony of agency custodian was sufficient to establish documents in files as authentic; rejecting requirement that documents had to be identified by handwriting authentication), *cert. denied*, 552 U.S. 1185 (2008); *cf. Traction Wholesale Ctr. v. NLRB*, 216 F.3d 92, 105 (D.C. Cir. 2000) (evidence that documents came from business files is evidence that signatures they contain are authentic). *See generally* 31 Wright & Gold § 7112, at 128 (authentication under Fed. R. Evid. 901(b)(7) "only concerns whether an item has been kept as a genuine public record; the provision says nothing about an item's creation or the accuracy of its contents"). Requiring further authentication would be inconsistent with the understanding that documents maintained in official files can ordinarily be presumed to be authentic because "the official custodian has a public duty to verify the genuineness of the papers offered for recording or filing and to accept only the genuine." 2 McCormick § 226, at 71. Of course, a litigant in a particular case may contend that a signature or notarization is inauthentic or fraudulent, and it may be necessary to introduce known handwriting exemplars or expert testimony to persuade the factfinder that the document is genuine. But ordinarily a public record will be admissible in evidence once the "minimal" threshold showing of Article IX is satisfied, 31 Wright & Gold § 7103, at 21–22 & n.24, 24, & 27–28, and "contradictory evidence [about authenticity] goes to the weight to be assigned by the trier of fact and not to admissibility," *United States v. Reilly*, 33 F.3d 1396, 1409 (3d Cir. 1994). To help minimize such problems, it would seem advisable to exercise quality control to ensure that signatures and notarization markings on documents are clear and legible.

## B.

Depending on how a Personnel Record is used in litigation, statements it contains may be considered hearsay. "'Hearsay' is a statement . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules

prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. If a Personnel Record is offered to prove that a statement contained within it is true—e.g., that the employee resided at the address given on the form—it will be considered hearsay. If it is offered to prove that the statement was made, regardless of its truth—e.g., that the employee designated a particular individual as the beneficiary of his life insurance—it will not be considered hearsay. In addition, the hearsay rules contain an exception for "[p]ublic records and reports," defined in relevant part as "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . the activities of the office or agency." Fed. R. Evid. 803(8)(A). If a Personnel Record satisfies that definition, it may be admitted to prove the truth of a matter it records, notwithstanding the availability of the person who completed it. *Id.*

Converting paper Personnel Records to electronic format would not appear to affect their admissibility under the hearsay rules. Converting a document from one format to another does not introduce another "declarant" or add a layer of hearsay. The hearsay exception for public records appears to contemplate that documents may be converted into another format for long-term storage, by providing that "[r]ecords, reports, statements, or data compilations, in any form" are admissible if they fit the remainder of the definition. *Id.* Your document conversion plan thus should not increase the risk that a given Personnel Record will be considered inadmissible hearsay.

## IV.

In sum, Electronic Personnel Records should be admissible under the Business Records Act and as "public records" under Rule 1005. Such records may be authenticated under Rules 901 and 902, and converting documents to electronic format should not affect their admissibility under hearsay rules.

The use of electronic versions of documents may marginally increase the risk that a litigant will be able to refute the accuracy of the paper printout—if, for example, a signature becomes smudged during scanning of the original paper form or the file is lost. These risks principally concern the reliability of the conversion and reproduction process itself, however, not inherent limitations on the admissibility of electronic versions of paper documents. Assuming that technological and conversion issues are addressed consistently and conscientiously, OPM's plan to adopt an electronic record-keeping system should not appreciably increase the risk that a personnel record will be deemed inadmissible in a particular case.

JOHN P. ELWOOD
*Deputy Assistant Attorney General*
*Office of Legal Counsel*